Argued July 15, reversed and remanded October 14, rehearing allowed December 2, argued on rehearing December 20, 1919, former opinion set aside and decree affirmed July 20, 1920.

## PIERRARD v. HOCH.

(184 Pac. 494; 191 Pac. 328.)

**Army and Navy—Soldiers' Relief Act Abating Mortgage Foreclosure not Affected by Federal Statutes.**

1. Laws of 1917, Chapter 275, abating mortgage foreclosure action where owner has enlisted in the military service of United States during and for 60 days subsequent to expiration of war, was not superseded or suspended by Soldiers' and Sailors' Civil Relief Act (U. S. Comp. Stats. 1918, Sections 3078¼a–3078¼ss); a federal act not possessing superiority to state legislation upon the subject of remedies and procedure in such courts.

**Constitutional Law—Moratorium as to Soldiers not Impairment of Contracts.**

2. Laws of 1917, Chapter 275, abating mortgage foreclosure action for period of war and 60-day period subsequent to termination thereof, where owner has enlisted in military service of United

States, does not impair obligation of contracts; such stay being reasonable in view of nation's need for enlisted men.

**Army and Navy—Under Soldiers' Relief Statute Mortgage Fore-closure Action not Enforceable.**

3. Under Laws of 1917, Chapter 275, court had no jurisdiction to enter decree in mortgage foreclosure action where owner was in the military service of the United States, having enlisted for a term of three years or for duration of war, under U. S. Comp. Stats. 1918, Sections 1891a, 2026a.

## ON REHEARING.

**Constitutional Law—Moratorium Law for Soldiers Does not Impair Obligation of Contracts.**

4. A moratorium law in favor of soldiers in some form is valid, not being violative of the constitutional provision against the passage of laws impairing the obligations of contracts.

**Army and Navy—Legislation Protecting Soldiers Against Suit Within Power of Congress.**

5. Federal legislation protecting soldiers against suit during war, as the federal Soldiers' and Sailors' Civil Relief Act (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann. Supp. 1919, Sections 3078¼a–3078¼ss), *held* within the power of Congress under Article I, Section 8, of the U. S. Constitution, giving power to declare war, raise and maintain armies, etc.

**Army and Navy—Federal Soldiers' and Sailors' Civil Relief Act Superior to State Act.**

6. Federal statute, protecting soldiers against suit during war, within power of Congress to enact under Article I, Section 8, of the U. S. Constitution, comes within Article VI, declaring Constitution and laws of United States shall be supreme law of land, binding on judges of every state, so that federal Soldiers' and Sailors' Civil Relief Act (U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann. Supp. 1919, Sections 3078¼a–3078¼ss) is superior to Laws of 1917, Chapters 275, 515, forbidding mortgage foreclosure action where owner has enlisted in military service of United States during the war with Germany.

**Judgment—Judgment by Default Rendered by Court Against Defendant on Whom Amended Complaint not Served not Void.**

7. Judgment rendered by default by the court against a defendant on whom the amended complaint was not served, though irregular, is not treated as void, though the rule is otherwise respecting entry by the clerk of judgments by default under statute giving him that ministerial authority.

**Judgment—Decree Void Pro Tanto Properly Canceled.**

8. Where decree was void *pro tanto* as a deficiency judgment, forbidden by Section 426, L. O. L., as to surplus remaining after return of judicial sale on foreclosure had been made, it was properly canceled to such extent by the court.

From Multnomah: GEORGE W. STAPLETON, Judge.

In Banc.

This is a suit for the foreclosure of a mortgage. For the purposes of this appeal, the parties have stipulated the facts, which, briefly stated, are as follows:

In 1909 the plaintiff sold the property which is the subject of the suit, to the defendant Hoch for the sum of $40,500, of which $10,500 was paid in cash, and for the remaining $30,000, there were executed the note and mortgage sued upon. On April 11, 1918, Hoch sold the property to the defendant Guyer, who has since been the owner of the legal title thereto. On July 6, 1917, Guyer enlisted in the army of the United States in the volunteer forces thereof, and is still in such service. During the pendency of the suit in the lower court, he was with the army in France. Under the provisions of the act of Congress of 1918, entitled ''Soldiers' and Sailors' Civil Relief,'' J. M. Haddock was appointed by the court as attorney for Guyer, for the purpose of protecting his interests in the litigation, by whom an answer was filed, pleading in abatement, by reason of Guyer's military service. It is conceded that at the time when the suit was commenced the debt was due and unpaid. Upon a trial there was a decree entered awarding plaintiffs a judgment against Hoch in the sum of $33,579.50, foreclosing the mortgage in the usual form, and concluding with the following language:

''That the Receiver be, and he is hereby discharged and is ordered to account to defendant Guyer for all the moneys collected by him; the decree to remain open for such further orders to be entered at the foot thereof, as the Court may hereafter direct for the purpose of granting such other and further relief as

may be necessary to carry into force and effect the provisions of this decree, and for the purpose of protecting and enforcing the rights of all parties to this decree, or the rights of purchaser of said property under this decree, and to that end and purpose the Court hereby retains jurisdiction of this cause.

"Dated February 15th, 1919."

Thereafter, on April 14, 1919, a supplemental decree was entered as follows:

"It Is Therefore Ordered: That the proceeds of said sale, be, and the same is hereby applied to the full and complete payment, satisfaction and discharge of the judgment and decree heretofore entered herein.

"And Be It Further Ordered: That no other or further execution be issued out of this Court upon said judgment or any part thereof, and that the same be cancelled of record as paid in full by the application of the proceeds of said sale; and the Clerk of this Court is hereby ordered to mark as satisfied the said judgment in the Journal and Judgment Docket in each of the places where entered or docketed."

From these decrees the plaintiffs and defendant Hoch appeal.          REVERSED AND REMANDED.

For appellants Eugene Pierrard and Pauline Pierrard, his wife, there was a brief over the names of *Mr. Roscoe C. Nelson* and *Mr. John W. Kaste,* with an oral argument by *Mr. Nelson.*

For defendant Eugene Hoch, there was a brief over the names of *Mr. J. M. Haddock* and *Mr. Louis H. Tarpley,* with an oral argument by *Mr. Haddock.*

BENSON, J.—Defendant Hoch bases his dissatisfaction with the conduct of the trial court, upon its action in proceeding with the suit in disregard of the provisions of Chapter 275, General Laws of Oregon for 1917.   This act reads as follows:

"No suit or action shall be commenced or maintained, during the period hereinafter provided for, to foreclose any mortgage upon real property, or to collect the debt secured thereby, if the land covered by the mortgage be owned, wholly or in part, by an enlisted man in the Army or Navy of the United States, who shall have enlisted therein in the volunteer forces or who shall have been enlisted in the National Guard of the United States and of the State of Oregon and his organization called into the service of the United States; and the lands of any such soldier or sailor shall be exempt from judicial sale for the satisfaction of any judgment during the period hereinafter provided for; provided, that this moratorium shall extend only during the period of actual service in the army or navy forces of the United States, and in no case shall begin prior to the day on which the Congress of the United States shall declare war, nor continue after sixty days subsequent to the conclusion of such war; provided, that all statutes of limitation in effect in the State of Oregon shall be suspended during the period above described, as to the mortgages, debts and judgments in this Act described."

Defendant insists that this statute deprives the court of jurisdiction to entertain this suit so long as the defendant Guyer continues in the service of the United States Army, and that upon the disclosure of the facts, the court should have dismissed or continued the cause. It may here be noted that the complaint alleges that the defendant Guyer is in the military service of the United States, having enlisted on July 6, 1917, and it is stipulated that such enlistment was in the volunteer forces of the United States.

An examination of the U. S. Compiled Statutes, 1918, Sections 1891a and 2026a, discloses that the term of such enlistment is three years, or a less time if the war shall sooner be terminated.

Plaintiffs present two reasons for the disregard of the act of the state legislature of 1917: 1. That it was superseded or suspended by the act of Congress of March 8, 1918, known as the Soldiers' and Sailors' Civil Relief, which undertakes to cover the same ground; and 2. That the act is unconstitutional, in that it impairs the obligation of a contract.

1. Regarding the first of these contentions, it may be remarked that counsel have not favored us with any citations of authority upon the question, and it is difficult to conceive of a federal act possessing superiority to state legislation upon the subject of remedies and procedure in state courts.

The important question for our consideration is this: Does Chapter 275, Laws of 1917, impair the obligations of contracts? During our Civil War of 1861–1865, a number of the state legislatures enacted similar stay laws, and we have examined the cases arising thereunder with deep interest. The Pennsylvania Act was as follows:

"No civil process shall issue or be enforced against any person mustered into the service of this state, or of the United States, during the term for which he shall be engaged in such service, nor until thirty days after he shall have been discharged therefrom: Provided, That the operation of all statutes of limitation shall be suspended upon all claims against such person during such term."

Under the act, in the case of *Breitenbach* v. *Bush,* 44 Pa. St. 313 (84 Am. Dec. 442), the Supreme Court of Pennsylvania, speaking by Mr. Justice WOODWARD, gives us an exhaustive and well-considered discussion of the subject, in which are collated and reviewed all of the leading and important authorities which might aid in a satisfactory solution of the problem. Then, as now, the federal statutes fixed the term of enlist-

ment of volunteers at three years, or for a less time
if the war was sooner ended.   There, as here, it was
urged that the act .violated the constitutional inhibi-
tion upon the states, to impair by law the obligation
of contracts.   The conclusion in that case is to the
effect that such stay of proceedings is permissible
and valid if for a time that is definite and not unrea-
sonable, but void if for an indefinite time, or for a
time that is unreasonable.   It is further considered
that the term of enlistment being fixed at three years,
or a possibly shorter time, it was not unreasonable,
considered in the light of existing circumstances.
After reviewing the condition of war which then pre-
vailed, the learned jurist continues:

"Now, if a stay of execution for three years would
not be tolerated in ordinary times, did not these cir-
cumstances constitute an emergency that justified the
pushing of legislation to the extremest limit of the
Constitution?   No citizen could be blamed for volun-
teering.   He was invoked to do so by appeals as
strong as his love of country.   In the nature of
things there is nothing unreasonable in exempting a
soldier's property from execution whilst he is absent
from home battling for the supremacy of the Consti-
tution and the integrity of the Union.   And when he
has not run before he was sent, but has yielded him-
self up to the call of his country, his self-sacrificing
patriotism pleads, trumpet-tongued, for all the indul-
gence from his creditors which the legislature has
power to grant.   If the term of indulgence seems
long in this instance, it was not longer than the time
for which the President and Congress demanded the
soldiers' services.   It was not for him, nor is it for
us to rejudge the discretion of the President and
Congress in this regard.   Basing ourselves on what
they did, constitutionally, the question for us is,
whether the stay granted by our own legislature to
our citizen soldiers was unreasonable.   In view of
the extraordinary circumstances of the case, we can-

not pronounce it unreasonable. We see in it no wanton or careless disregard of the obligation of contracts, but only a sincere effort to enable the general government to prosecute with success a war which, in its exclusive right of judgment, it resolved to wage.''

2. All that is said about existing conditions at the time when the statute was enacted, and what is said about the reasonableness of the suspension of the remedy in that case, is equally true and impressive in the consideration of the case at bar, and demands no elaboration at our hands. The doctrine of this opinion is supported by the following citations: *Bruns* v. *Crawford,* 34 Mo. 330; *Johnson* v. *Higgins,* 3 Metc. (Ky.) 566; *Barkley* v. *Glover,* 4 Metc. (Ky.) 44; *Wolfkiel* v. *Mason,* 16 Abb. Pr. (N. Y.) 221; *McCormick* v. *Rusch,* 15 Iowa, 127 (83 Am. Dec. 401); *Edmondson* v. *Ferguson,* 11 Mo. 344; *Lindsey* v. *Burbridge,* 11 Mo. 545; *Coxe's Executor* v. *Martin,* 44 Pa. St. 322.

3. We conclude, therefore, that the trial court was without jurisdiction to enter any decree at the time when it undertook to do so. This view renders it unnecessary to consider any other assignment of error.

The decree is reversed, and the cause will be remanded for further proceedings not inconsistent herewith.          REVERSED AND REMANDED.

Former opinion set aside and decree of lower court affirmed July 20, 1920.

ON PETITION FOR REHEARING.

(191 Pac. 328.)

*Mr. John W. Kaste* for appellants Pierrard.

*Mr. J. M. Haddock* and *Mr. Louis H. Tarpley* for defendant Hoch.

BURNETT, J.—The petition of the plaintiffs for rehearing urges the contention that the act of Congress of March 8, 1918, known as the Soldiers' and Sailors' Civil Relief Act, governs the matter of exemption of those in the military service of the United States from the operation of litigation in the state. courts, and is paramount to and exclusive of the state legislation on the same subject as embodied in the act of February 19, 1917, "relating to and limiting suits to foreclose mortgages and levy of execution upon judgments upon and against lands of soldiers and sailors in the actual service of the United States during war": Laws 1917, Chapter 275, p. 515. The petition also argues that the state legislation is unconstitutional, in that it impairs the obligation of the contract contained in the note and mortgage in suit.

4. A re-examination of the validity of moratorium laws in general when measured by the constitutional standard forbidding the passage of laws impairing the obligation of contracts has led us to the same conclusion as before. Indeed, the regularity of the state statute alone is questioned here, and that only by the plaintiffs. All contracts are made in the light of all the terms of the national and state organic laws. Among them as indicated by the former opin-

ion and the precedents there cited is the power of the legislative branch of government to suspend the operation of remedies—not the obligation of contracts—for a reasonable time, to the end that the soldier may not be hindered or impeded in the war service of his country. We regard it as settled, therefore, that a moratorium law in some form is valid.

The question that more directly concerns us in the present juncture is: Which of the twain shall prevail to the exclusion of the other, if at all, the act of Congress, or the statute enacted by the legislature of this state on that subject?

The act of Congress of March 8, 1918, Chapter 20, 40 Stat. 440 (U. S. Comp. Stats. Ann. Supp. 1919, §§ 3078¼a–3078¼ss, Fed. Stats. Ann. (1918 Supp.), pp. 812, 825), begins by stating that:

"For the purpose of enabling the United States the more successfully to prosecute and carry on the war in which it is at present engaged, protection is hereby extended to persons in the military service of the United States in order to prevent prejudice or injury to their civil rights during their term of service and to enable them to devote their entire energy to the military needs of the nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the continuance of the present war": Section 100, U. S. Comp. Stats. 1919 (Section 3078¼a, Fed. Stats. Ann. 1918, Supp., p. 812).

The legislation goes on to define the terms "persons in military service," what is meant by the period of military service, it being from the date of the approval of the act as to all persons then in service and, for those entering afterwards, the date of such entrance, and the termination to be from the date of the discharge from active service, or death

while in such service, but in no case beyond the expiration of the law. It is said therein that:

"The term 'court' as used in this act shall include any court of competent jurisdiction of the United States or of any state, whether or not a court of record": Section 101 (Section 3078aa).

Under Article II (Sections 200–205 [Sections 3078¼bb–3078¼e]), if a defendant in the military service makes default of appearance in any litigation, it is required that a bond shall be given to save him harmless from loss or damage by reason of any subsequent judgment, before the court will make final determination of the action. Under certain circumstances the court may appoint an attorney for him, and provision is made for opening the final decree in his interest if the soldier has a genuine, valid defense. Much is left to the discretion of the court by the subsequent provisions of the act, so that the rights of both parties may be properly conserved. In short, the act of Congress very fully covers the procedure to be observed in case a soldier or sailor is a party defendant in any state court.

On the other hand, the Oregon moratorium law (Chapter 275, Laws of 1917, page 515), in substance, tersely declares that no suit or action shall be commenced to foreclose a mortgage or to collect a debt secured thereby if the land involved is wholly or partly owned by a volunteer soldier or sailor, nor shall the same be sold to satisfy a judgment against such an individual. The state act forbids such litigation. The national act provides for carrying it on to completion. The sale denied by the state is allowed by the nation, all under conditions which Congress evidently deemed reasonable.

97 Or.—6

It is well first to inquire whether or not such legislation is within the scope of the powers of Congress. It is said in Section 8, Article I, of the United States Constitution, that:

"The Congress shall have power * * to declare war, * * to raise and support armies, * * to provide and maintain a navy, * * to make rules for the government and regulation of the land and naval forces; * * and to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States or in any department or officer thereof."

Respecting the implied powers of Congress, the text-writer in 12 C. J., page 744, thus sums up the accepted doctrine:

"While the Constitution of the United States is a grant of power and the federal government possesses only the powers conferred upon it by that instrument, yet it possesses not only the powers expressly conferred, but also all powers reasonably necessary to carry into execution the powers granted. The word 'necessary' has been construed not to mean 'indispensable,' but to include all powers which are appropriate for the accomplishment of a constitutional purpose, and not forbidden by the letter or spirit of the Constitution."

In the leading case of *McCulloch* v. *Maryland*, 4 Wheat. 416, 421 (4 L. Ed. 579), Chief Justice MARSHALL said:

"Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional."

Illustrations of approved exercise of implied powers of Congress ancillary to the enabling clauses

of the Constitution are found in the national pure food laws, the federal employers' liability law and such as the acts of Congress of March 3, 1863 (Chapter 81, 12 Stat. 755), and May 11, 1866 (Chapter 80, 14 Stat. 46), extending protection to all persons for acts done under military authority in conducting the Civil War. As early as March 16, 1802, the Congress enacted a statute (Chapter 9, 2 Stat. 136), prohibiting the arrest of any soldier for a debt of less than the sum of twenty dollars contracted before enlistment, or for any debt contracted after enlistment. Similar legislation was enacted by Congress during the war with Mexico, 1846–1848. All these acts have been upheld. The law of Congress now under consideration thus far has had but little judicial attention, so far as our research has extended. In *Hoffman* v. *Charlestown Five-Cent Savings Bank,* 231 Mass. 234 (121 N. E. 15), the Supreme Court of Massachusetts expressly sustains the statute, saying:

"There can be no question of the constitutionality of the act. It is a war measure within the power of Congress, therefore the supreme law of the land. For this reason it governs the foreclosure of mortgages upon real estate within the territorial limits of the commonwealth."

5, 6. It would therefore appear, as declared in substance in the preamble, that this legislation is a legitimate function of Congress under its power to declare war and to maintain armies, to enact laws designed to protect its soldiers and sailors engaged in the prosecution of a war, and thus to maintain the morale of its armies. Within the doctrine announced by the great expounder of the Constitution, Chief Justice MARSHALL, it is constitutional because it is a convenient means of carrying out the declared power of Congress. This being true, it comes within the

scope of Article VI of the national Constitution, declaring that:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof * * shall be the supreme law of the land; and the judges of every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

On this point the Supreme Court of Wisconsin, in *Konkel* v. *State,* 168 Wis. 335 (170 N. W. 715), upheld this very act as against the law of the State of Wisconsin covering common ground.

In the present juncture, the law of Congress, supreme as it is, has set down a certain procedure governing the issues here involved. Its authority is paramount to that of the state. There cannot be two rules covering the same subject matter; for as said in *Prigg* v. *Pennsylvania,* 16 Pet. 639, 697 (10 L. Ed. 1060, see, also, Rose's U. S. Notes), quoted with approval in *New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147 (61 L. Ed. 1045, Ann. Cas. 1917D, 1139, L. R. A. 1918C, 439, 37 Sup. Ct. Rep. 646):

"If Congress have a constitutional power to regulate a particular subject and they do actually regulate it in a given manner, and in a certain form, it cannot be, that the state legislatures have a right to interfere, and as it were, by way of complement to the legislation of Congress, to prescribe additional regulations, and what they may deem auxiliary regulations for the same purpose. In such a case, the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject matter. Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it."

In the Winfield case the question involved was: Which should prevail, the Federal Employers' Lia-

bility Act of April 22, 1908, 35 Stats. at L. 65, Chapter 149 (U. S. Comp. Stats., §§ 8657–8665, Fed. Supp. Ann. (2 ed.), p. 1208), or the New York Workmen's Compensation Act (N. Y. Laws 1913, Chapter 816)? It was there held, according to the syllabus, that:

"The entire subject of the liability of interstate railway carriers for the death or injury of their employees while employed by them in interstate commerce is so completely covered by the provisions of the Federal Employers' Liability Act of April 22, 1908, * * as to prevent any award under the New York Workmen's Compensation Act * * where an employee was injured, or killed without fault on the railway company's part while he was engaged in interstate commerce, although the federal act gives the right of recovery only when the injury results in whole or in part from negligence attributable to the carrier."

The opinion of Mr. Justice VAN DEVANTER discusses the question at length, and arrives at the conclusion that the federal act was exclusive; one of the reasons given being the desirability of having a uniform statute on the subject, so that interstate carriers should not be subject to new legislation every time they crossed a state line. That circumstance is peculiarly applicable to the case in hand, for the reason that the federal legislation is designed for the protection of soldiers in the service of the general government, and it would be depreciative of the morale of the troops if it were allowable that those from Oregon should be affected by one kind of moratorium law and those from other states by some greatly different. Congress clearly had the right to enter this field of legislation and make a uniform rule to the exclusion or supersession of all state laws on the same subject.

Mr. Justice BRANDEIS dissented in the Winfield case, 244 U. S. 147 (61 L. Ed. 1045, Ann. Cas. 1917D, 1139, L. R. A. 1918C, 439, 37 Sup. Ct Rep. 646), and cited certain precedents as tending to support his views. Among them was *Sligh* v. *Kirkwood,* 237 U. S. 52 (59 L. Ed. 835, 35 Sup. Ct. Rep. 501). In that case a conviction under a state law forbidding the shipment of unripe fruit unfit for use was sustained, although it was an interstate shipment, for the reason that Congress had not, prior to that time, legislated on the subject. Another was *Atlantic Coast L. Ry.* v. *Georgia,* 234 U. S. 280 (58 L. Ed. 1312, 34 Sup. Ct. Rep. 829), wherein a statute of the State of Georgia prescribing a certain kind of locomotive headlight was sustained, because there was no federal legislation on the subject and notwithstanding it would incidentally affect railways engaged in interstate commerce. It was held in *Missouri etc. Ry.* v. *Harris,* 234 U. S. 412 (58 L. Ed. 1377, L. R. A. 1915E, 942, 34 Sup. Ct. Rep. 790), that a statute of the state providing for an attorney's fee for the collection of all claims indiscriminately, including those against an interstate carrier, was valid, because in the first place it only incidentally affected interstate carriers, and, further, because Congress had not acted on that subject. *Savage* v. *Jones,* 225 U. S. 501 (56 L. Ed. 1182, 32 Sup. Ct. Rep. 715), was an effort of a resident of Minnesota who manufactured what was called "International Stock Food" to avoid the effect of an act of the State of Indiana requiring a statement of the ingredients of such compounds to be placed on the package. The opinion by Mr. Justice HUGHES affords a canon by which it may be determined which shall be paramount, a federal or a state law on the same subject, thus:

"When the question is whether a federal act overrides a state law, the entire scheme of the statute must, of course, be considered, and that which needs must be implied is of no less force than that which is expressed. If the purpose of the act otherwise cannot be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power. * *

"But the intent to supersede the exercise by the state of its police power as to matters not covered by the federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state."

The principle that when the national legislature has spoken on a subject within the scope of its powers, it must prevail over any state legislation on the same subject was distinctly recognized in this case. The only holding applicable here was that in that instance there was nothing in the federal law covering the point in dispute, and hence that there was no conflict. *Missouri Pacific Ry. Co.* v. *Larrabee F. Mills Co.*, 211 U. S. 612 (53 L. Ed. 352, 29 Sup. Ct. Rep. 214) merely decides that, in the absence of Congressional or Interstate Commerce Commission's action the state was permitted to enforce the common-law duty of common carriers to treat all shippers alike. In *Asbell* v. *Kansas,* 209 U. S. 251 (52 L. Ed. 778, 14 Ann. Cas. 1101, 28 Sup. Ct. Rep. 485), the inspection of cattle coming into a state and the rejection of those diseased was upheld in default of a United States law on the same subject. There also the principle already alluded to is recognized, but held not applicable under the legislation in question.

*Crossman* v. *Lurman*, 192 U. S. 189 (48 L. Ed. 401, 24 Sup. Ct. Rep. 234), distinguished between the inspection law of New York preventing the sale of adulterated food, and a similar law forbidding the importation of food, drugs or liquor adulterated with poisonous or noxious chemicals. The right of a state to protect its inhabitants from imposition by means of food adulterated in any manner was upheld, because the federal law restricted its operation to that adulterated with poisons, without reference to harmless alloys. *Reid* v. *Colorado*, 187 U. S. 137 (47 L. Ed. 108, 23 Sup. Ct. Rep. 92), was another case respecting the transportation of livestock suspected to be suffering from an infectious disease. Discussing the question involved, Mr. Justice HARLAN, speaking for the court, said:

"It is quite true as urged on behalf of the defendant, that the transportation of livestock from state to state is a branch of interstate commerce, and that any specified rule or regulation in respect of such transportation, which Congress may lawfully prescribe or authorize, and which may properly be deemed a regulation of such commerce, is paramount throughout the Union. So that when the entire subject of the transportation of livestock from one state to another is taken under direct national supervision and a system devised by which diseased stock may be excluded from interstate commerce, all local or state regulations in respect of such matters and covering the same ground will cease to have any force, whether formally abrogated or not, and such rules and regulations as Congress may lawfully prescribe or authorize will alone control."

After having thus declared the precept the opinion goes on to state:

"But the difficulty with the defendant's case is that Congress has not by any statute covered the whole subject of the transportation of livestock among the

several states, and, except in certain particulars not involving the present issue, has left a wide field for the exercise by the states of their power, by appropriate regulations, to protect their domestic animals against contagious, infectious and communicable diseases.''

*Missouri etc. Ry. Co.* v. *Haber,* 169 U. S. 613 (42 L. Ed. 878, 18 Sup. Ct. Rep. 488), concludes that the federal Animal Industry Act does not override the Kansas legislation, giving a cause of action against the owner of imported diseased cattle which communicate their infirmity to cattle belonging to the plaintiff. The principle under consideration is thus recognized in the syllabus:

''A state statute, although enacted in pursuance of a power not surrendered to the general government, must in the execution of its provisions yield in case of conflict to a statute constitutionally enacted under authority conferred upon Congress; and this, without regard to the source of power whence the state legislature derived its enactment.''

*Smith* v. *Alabama,* 124 U. S. 465 (31 L. Ed. 508, 8 Sup. Ct. Rep. 564), upheld a regulation of the State of Alabama requiring locomotive engineers to be examined and licensed by the state, although the engineer in question was engaged in interstate commerce. But the reason was, that there was no federal legislation on the subject. The opinion teaches that a federal law on the subject would be valid, and cites on that point, *Sinnott* v. *Davenport,* 22 How. 227 (16 L. Ed. 243), upholding the supremacy of the federal law on the subject of enrolling and licensing vessels engaged in the coast trade. This remark of the court is significant:

''The power might with equal authority be exercised in prescribing the qualifications for locomotive engineers employed by railroad companies engaged

in the transportation of passengers and goods among the states, and in that case would supersede any conflicting provisions on the same subject made by local authority.''

In *Michigan Cent. Ry.* v. *Vreeland,* 227 U. S. 59 (57 L. Ed. 417, Ann. Cas. 1914C, 176, 33 Sup. Ct. Rep. 192), referring to the federal Employers' Liability Act, it was said:

''Congress has undertaken to cover the subject of the liability of railroad companies to their employees injured while engaged in interstate commerce. This exertion of a power which is granted in express terms must supersede all legislation over the same subject by the states.''

And in another part of the opinion it was said:

''We may not piece out this act of Congress by resorting to the local statutes of the state of procedure or that of the injury.''

*St. Louis etc. Ry. Co.* v. *Seale,* 229 U. S. 156 (57 L. Ed. 1129, Ann. Cas. 1914C, 156, 33 Sup. Ct. Rep. 651), was an action under a state statute for the death of an employee engaged in interstate commerce, and the court said:

''There was a Texas statute on the subject and also the federal one. Both could not occupy the same field, and they were unlike. * * If the federal statute was applicable, the state statute was excluded by reason of the supremacy of the former under the national Constitution.''

The defendant Hoch places much reliance upon the case of *Carey* v. *South Dakota,* 250 U. S. 118 (63 L. Ed. 886, 39 Sup. Ct. Rep. 403). The plaintiff there sought to escape prosecution under the laws of the state forbidding the shipment of ducks. He claimed immunity by virtue of the federal Migratory Bird Act of March 4, 1913, Chapter 145 (37 U. S.

Stats. 828), arguing that, because Congress had legislated on the subject in any manner, the state law was superseded. But that federal enactment does not in any sense expressly or impliedly supersede the state legislation. On the contrary, it invites cooperation by the states, saying:

"Nothing herein contained shall be deemed to affect or interfere with the local laws of the states and territories for the protection of nonmigratory game birds resident and breeding within their borders, nor to prevent the states and territories from enacting laws and regulations to promote and render efficient the regulations of the Department of Agriculture provided under this statute."

This self-construction of the act is a vital part of the law. Like all other features of that statute it is included in the supremacy of federal legislation in matters respecting which Congress has constitutional power to pass laws.

In *Charlottesville etc. Ry. Co.* v. *Varnville Furniture Co.,* 237 U. S. 597 (59 L. Ed. 1137, Ann. Cas. 1916D, 333, 35 Sup. Ct. Rep. 715), where there was involved a penalty prescribed by South Carolina for failure to pay claims for damages to interstate shipments of merchandise, it was said:

"When Congress has taken the particular subject matter in hand, coincidence is as ineffective as opposition, and a state law is not to be declared a help because it attempts to go further than Congress has seen fit to go."

Involved in *Pennsylvania Ry. Co.* v. *Public Service Commission,* 250 U. S. 566 (63 L. Ed. 1142, 40 Sup. Ct. Rep. 36), was a prosecution of the company before the commission for a violation of the Pennsylvania state law requiring a platform on the rear car of all trains. The court there said:

"But when the United States has exercised its exclusive powers over interstate commerce so far as to take possession of the field, the states no more can supplement its requirements than they can annul them."

In all of the precedents to which our attention has been directed, and in many others we have examined, the principle is maintained that, where Congress has authority under the Constitution to legislate on a subject, and has covered the field with its enactments, legislation on the part of the state on the same subject is superseded and laid out of the account: *Chicago, R. I. & P. Ry. Co.* v. *Hardwick etc. Co.*, 226 U. S. 426 (57 L. Ed. 284, 46 L. R. A. (N. S.) 203, 33 Sup. Ct. Rep. 174); *Adams Express Co.* v. *Croninger*, 226 U. S. 491 (57 L. Ed. 314, 44 L. R. A. (N. S.) 257, 33 Sup. Ct. Rep. 148).

It is clear that under the war-making power the national legislature has the authority to provide for the protection of its soldiers, to relieve them from anxiety and annoyance respecting litigation at home, and to make a general rule applicable alike to all those engaged in its service. In this instance it has occupied the whole field, which of necessity excludes all state legislation on the subject. To hold otherwise is to impeach the act of Congress as beyond the powers of that body, a task we should shrink from assuming.

It follows that the national legislation governing procedure in this case was the proper standard for the Circuit Court to follow, to the exclusion of the previous enactment on the subject by the legislative department of this state. This results because the two enactments are incompatible with each other. The state law forbids all action, while the national law countenances action under conditions more or

less favorable to the military defendant. This conclusion renders it unnecessary for us to decide whether or not the act of the co-ordinate branch of the state government is valid, a work to be avoided unless its performance is strictly necessary. However that may be, it is clear that the subsequent law of Congress at least suspended the state legislation on the same subject, in the same way that Congressional action suspends the insolvency laws of the state, or state legislation affecting interstate commerce, and the like.

The other question presented, respecting the action of the court limiting the recovery to the amount realized at the sale on foreclosure, is governed by the majority opinions in *Wright* v. *Wimberly,* 79 Or. 626 (156 Pac. 257), and 94 Or. 1 (184 Pac. 740). Together with Justice BENSON and Justice HARRIS the writer refused to agree to the conclusion there reached by our brethren. We three adhere to the views we there expressed, and apply the result of that case to the instant controversy solely on the doctrine of *stare decisis.*

7. Contention is made by the defendant Hoch that the decree was void as against Guyer, because the amended complaint was not served upon him. *Hodgdon* v. *Goodspeed,* 60 Or. 1 (118 Pac. 167), cited by him, does not bear out the contention of Hoch on this point. The decree in this case was rendered by the court and was not a ministerial act as narrated in the Hodgdon-Goodspeed case; and it was there expressly stated that judgments of the kind rendered by the court, though irregular, are not treated as void, although the rule is otherwise respecting an entry by the clerk of judgments by default under a statute giving him that ministerial authority. Substantially the same doctrine is taught in *Gillard* v.

*Gillard,* 88 Or. 95 (171 Pac. 557), also cited in behalf of Hoch.

8. Complaint is made also that the court had no right to direct the cancellation of the decree as to the surplus remaining after the return of sale had been made, and that, too, after the term; but under the doctrine of *Wright* v. *Wimberly,* 79 Or. 626 (156 Pac. 257), 94 Or. 1 (184 Pac. 740), the decree was void *pro tanto,* and, as taught in *Hodgdon* v. *Goodspeed,* 60 Or. 1 (118 Pac. 167):

"When a void judgment is called to the attention of a court in which it was entered, it is incumbent upon that tribunal to purge its records of the nullity by canceling the entry."

If, therefore, as taught in *Wright* v. *Wimberly* by the majority, the decree of the Circuit Court, so far as the unsatisfied surplus remaining after judicial sale is concerned, was a deficiency judgment forbidden by our statute (Section 426, L. O. L.), it follows that it was *pro tanto* void, and that the court was correct in directing its cancellation when the matter was presented. These considerations lead to an affirmance of the decree of the Circuit Court.

FORMER OPINION SET ASIDE AND DECREE AFFIRMED.