## HERMAN OLSON, Respondent, v. GOWAN-LENNING BROWN COMPANY, Appellant.

(182 N. W. 929.)

**Army and navy — under Soldiers' and Sailors' Civil Relief Act, sheriffs' deed held not to affect expiration of equity of redemption.**

In an action to set aside a sheriff's deed upon a mortgage foreclosure by advertisement, relying upon the Federal and State Moratorium Acts, where it appears that on December 1st, 1917, the foreclosure sale was held; that on January 29, 1918, the State Act, and, on March 8, 1918, the Federal Soldiers

NOTE.—Authorities discussing the question of validity and construction of war legislation in the nature of moratory statute are collated in a note in 9 A.L.R. 6.

and Sailors Civil Relief Act, were enacted; that on December 6, 1918, the sheriff's deed was issued; that the plaintiff was in the military service from July, 1917, to May 22, 1919, and that, in October, 1920, he instituted this action, it is *held:*

1. That the execution of a sheriff's deed evidences only the ministerial act of the officer to complete the formal transfer of the naked legal title after the expiration of the equity of redemption and does not affect the expiration of the equity of redemption.

**Army and navy — Federal Moratorium Act held inapplicable in action to set aside sheriff's deed.**

2. That the Federal Act is not applicable, even though it be assumed that the plaintiff's equity of redemption was suspended during the period of his military service and for three months thereafter, for the reason that such equity of redemption thereafter fully expired before the institution of the present action and without any alleged offer or tender made to redeem.

**Army and navy — State Moratorium Act held inapplicable in action to set aside sheriff's deed.**

3. That, upon construction, the provisions of the State Moratorium Act (chapter 10, Spec. Sess. Laws 1918) granting privileges to a soldier during the time the United States is engaged in war and for an additional period of one year, refers, pursuant to the purposes of the act, to the actual engagement of the United States in the war and that such engagement terminated on Armistice day, November 11, 1918.

**Army and Navy — State Moratorium Act held inapplicable where equity of redemption fully expired.**

4. That the plaintiff has not brought himself within the terms of such State Moratorium Act, although it be assumed that his equity of redemption was suspended since the inception of the act and until one year after Armistice day, November 11, 1918, for the reason that subsequent to such time and before the institution of this action his equity of redemption fully expired.

Opinion filed May 2, 1921.

Action in District Court, Eddy County, *Cole,* J.

Defendant has appealed from an order overruling a demurrer. Reversed.

*Henry G. Middaugh, Fred T. Cuthbert,* and *Arthur Ray Smythe,* for appellant.

The law in force at the time a mortgage is executed, with all the conditions and limitations it imposes, is the law which determines the force and effect of a mortgage. Von Hoffman v. Quincy, 4 Wall. 535,

47 N. D.—35.

18 L. ed. 403; Bronson v. Kinzie, 1 How. 311, 11 L. ed. 143; Brine v. Hartford F. Ins. Co. 96 U. S. 627, 24 L. ed. 858; Barnitz v. Beverly, 163 U. S. 118, 41 L. ed. 93, 16 Sup. Ct. Rep. 1042.

Any modification of a contract by subsequent legislation, against the consent of one of the parties, unquestionably impairs its obligations, and is prohibited by the Constitution. Barnitz v. Beverly, supra.

The defendant does not offer to do equity. Beekman v. Frost, 18 Johns. 544.

"The party, to entitle himself to the aid of a court of chancery, should show himself ready and desirous to perform on his part." Easton v. Lockhart, 10 N. D. 181, 86 N. W. 697.

*Lyman N. Miller,* for respondent.

BRONSON, J. *Statement.*—The defendant has appealed from an order overruling a demurrer to the complaint. In November, 1914, the plaintiff gave to the defendant a mortgage upon farm lands in Eddy and Griggs counties. On July 8, 1917, plaintiff entered the service of the United States and served thereafter as a private soldier until May 22, 1919, when he was honorably discharged. On December 1st, 1917, pursuant to proceedings had to foreclose the mortgage by advertisement, the lands were sold and a sheriff's certificate issued to the defendant. On December 6, 1918, a sheriff's deed was issued. In October, 1920, the plaintiff, relying upon the Federal and State Moratorium Acts, instituted this action to set aside the sheriff's deed, to compel the defendant to account for the rents and profits received by the defendant for the years 1918 and 1919, and to pay the plaintiff for the rents and profits received in the year 1920. On January 29, 1918, the State Moratorium Act (chap. 10, Spec. Sess. Laws 1918) was adopted. On March 8, 1918, the Federal Soldiers and Sailors Civil Relief Act was enacted.

*Decision.*—We are of the opinion that the Federal act, upon the alleged facts, is not applicable. The plaintiff relies upon that portion of the act which provides that no sale under the power of sale shall be valid if made during the period of military service or within three months thereafter, unless upon an order of sale previously granted by the court and a return thereto made and approved by the court. Sec. 302. Plaintiff also cites § 8087, N. D. Comp. Laws 1913, which pro-

vides that if any mortgaged premises are not redeemed, it shall be the duty of the officer to complete the sale by executing a deed of the premises so sold to the purchaser. He contends that the issuance of such deed is a part of the sale. The foreclosure sale in the instant case was had before the Federal act was enacted. No question is therefore injected of the necessity of foreclosing by action under the terms of the Federal act. Such sale operated to pass to the purchaser the title to the premises subject only to the equity of redemption within one year. At the expiration of this equity of redemption the full beneficial title of the mortgagor passed to the purchaser. The execution of the sheriff's deed is only the ministerial act required to complete the formal transfer of the legal title when the equity of redemption had expired. State ex rel. Forest Lake State Bank v. Herman, 36 N. D. 177, 161 N. W. 1017. Neither the execution nor the nonexecution of this sheriff's deed serves to diminish or extend the equity of redemption. If, for purposes of argument only, it be assumed that the equity of redemption was suspended, during the period of plaintiff's military service and for three months thereafter, it fully appears, nevertheless, that his equity of redemption thereafter fully expired before the institution of the present action, and without any alleged offer or tender made to redeem.

Has the plaintiff brought himself within the terms of the State Moratorium Act? This court has heretofore given a broad and liberal construction to the State Moratorium Act to accomplish the beneficent purposes for which it was enacted. Thress v. Zemple, 42 N. D. 599, 9 A.L.R. 1, 174 N. W. 85; Strand v. Larson, 45 N. D. 7, 176 N. W. 736.

It is to be noted again that the foreclosure sale was had prior to the enactment of the state act. It is not contended that the act affects the validity of such sale held in December, 1917. The point of attack is that the sheriff's deed, issued in December, 1918, and while the plaintiff was still in service, was directly within the terms of the act and, therefore, is void. As heretofore stated, the sheriff's deed simply evidences the formal transfer of the naked legal title and the ministerial act of the officer concerned. Accordingly, resort must be made to the position and contention that the state act operates to suspend the equity of redemption.

If it be conceded again, for purposes of argument only, that the equity of redemption was so suspended, the question then arises, During what period of time was it so suspended?    The state act provides that no proceeding by action or otherwise shall be had or taken in this state for the foreclosure of a mortgage against any person in the active military service of the United States during the time the United States *is engaged in the present war* and for *an additional period of one year,* and, during such time, no further proceeding shall be taken in any action or proceeding that is pending at the time of the taking effect of the act in which such person is a party over his objection.   Spec. Sess. Laws 1918, chap. 10.   If, within the contemplation of the act, the United States *is still engaged in the present war,* then, under the assumption that the equity of redemption is suspended by the act, such equity of redemption is still suspended.   If, however, the engagement of the United States in the war with Germany ended upon the cessation of actual war, then the equity of redemption remained suspended, under the assumption made, only until one year after Armistice day, November 11, 1918.   Upon the former construction, the plaintiff would still have a right of redemption.   Under the latter construction, this right of redemption expired in September, 1920.

In placing a construction upon the statute, aid can be afforded practically only through the consideration of the act itself and the circumstances existing when it was enacted.

In this regard the Federal act affords no aid:   It provides that the act shall remain in force until the termination of the war and for six months thereafter.   It extends its privileges to soldiers during their term of military service and for certain limited periods after its termination.   It specifically provides that the termination of the present war means by the treaty of peace as proclaimed by the President. Generally speaking a Moratorium Act, favoring persons engaged in the military service, which operates to stay actions or proceedings against such person may be upheld when the period prescribed is for a reasonable time.   See note in 9 A.L.R. 11; Breitenbach v. Bush, 44 Pa. 313, 84 Am. Dec. 442.   This statute was enacted at a time when the Federal Selective Service Laws were in force and when the men of this state in various walks of life had been, or were being, called into actual service in the defense of our country.

Under the Federal act (May 18, 1917) the service of these men, whether selected by draft or under enlistment, was for the period of the war, unless sooner terminated by discharge or otherwise. 9 Fed. Stat. Anno. 2d ed. 1163. The state act was created and enacted as emergency legislation. Throughout, it contemplates the extension of its benefits to large numbers of our citizens who recently theretofore had been, or were being, called into service under an emergency situation and who necessarily had to leave behind, without personal protection, their civil rights while they were away in active military service. This court has heretofore held, in Strand v. Larson, supra, that a person so called into active military service, was entitled even after his discharge to the benefits of the act for the period therein prescribed. This gave recognition to an opportunity for, and a period of rehabilitation, namely, an additional period of one year after the engagement of our government in the present war. In the light of present circumstances and present knowledge it would appear to be a strange and unwarranted construction to extend this period of rehabilitation after return to civil life for an indefinite period of time dependent upon when the Federal government legally, although not actually, terminates the war. The act, as heretofore stated, was emergency legislation. It was put into operation under emergency conditions and to provide protection during an emergency. In fact the actual engagement of the United States in the present war ceased upon Armistice day, November 11, 1918. The purposes of the act are fully subserved and the emergency condition contemplated fully covered, by recognizing the extension of its benefits during the time that our government was actually engaged in the present war and for the additional period therein prescribed.

Any other construction would serve to extend the benefits of the act beyond its contemplated purposes and would serve to jeopardise its validity. See chap. 5, Subd. 6, Spec. Sess. 1918; chap. 138, Laws 1921. It is therefore our opinion that the act contemplates and was intended to contemplate the time when the United States was actually engaged in the war, and for an additional period of one year thereafter. The order of the trial court is reversed.

BIRDZELL, J., concurs.

CHRISTIANSON, J. (concurring specially). The case before us involves a construction of the Federal and State Moratory Acts. The facts involved are fully stated in the opinion prepared by Mr. Justice Bronson. I agree with Mr. Justice Bronson that plaintiff's complaint wholly fails to state a cause of action within the purview of the Federal act. I also agree "that the execution of a sheriff's deed evidences only the ministerial act of the officer to complete the formal transfer of the naked legal title after the expiration of the period of redemption and does not affect the expiration of the redemption period." In other words, I fully concur in the principles announced in paragraphs 1 and 2 of the syllabus and in those portions of the opinion relating thereto. I have had some difficulty, however, in arriving at a conclusion as to the matters covered by paragraphs 3 and 4 of the syllabus, namely, the construction to be placed upon the phrase "During the time the United States is engaged in the present war," in the state Moratorium Act. This phrase is contained in § 1 of the act, which section reads as follows: "No proceeding, by action or otherwise, shall be had or taken in this state for the foreclosure of a mortgage, or other lien, on real or personal property, or for the cancelation of an executory contract for the sale of land; or for the recovery of any indebtedness against any person in the active military service of the United States as hereinafter defined, during the time the United States is engaged in the present war and for an additional period of one year, and during such time no further proceedings shall be taken in any action or proceeding that is pending at the time of the taking effect of this act in which such a person is a party over the objection of such party, his attorney or any person interested on his behalf, nor shall any judgment against such person in the military service be enforced against him or his property during said period." Laws Spec. Sess. 1918, chap. 10.

I am frank to confess that my mind is not free from doubt as to what the lawmakers intended should constitute the point of time when the United States should be deemed to be no longer engaged in the "present war." Manifestly, "the time the United States is engaged in the present war" would terminate upon the happening of one of two

events: Namely, the signing of the armistice and the cessation of actual warfare, or the ratification of the treaty of peace, or a declaration of a state of peace by the Federal government, which one of these two events did the lawmakers intend should constitute the termination of the period defined in the Moratorium Act as "the time the United States is engaged in the present war? According to the views expressed by Mr. Justice Bronson, the United States ceased to be engaged in the present war within the purview of the state act, upon the signing of the armistice and the cessation of actual warfare. As I have already indicated, I have some doubt as to what the lawmakers actually did intend. But it is elementary that laws must be construed so as to be valid and operative if it is at all possible to do so. The validity of State Moratory Acts is generally held to be dependent upon whether the time of suspension of remedies is reasonable or unreasonable. See note in 9 A.L.R. 11. In Strand v. Larson, 45 N. D. 7, 176 N. W. 736, this court held that a person who had been called into active military service was entitled, even after his discharge, to the benefits of the act, for the full period prescribed therein. It is a matter of common knowledge that most of the men who were engaged in active military service from this state have long since returned to their usual avocations. Many of these men were men of affairs. If the state Moratorium Act means that actions may not be commenced to enforce contracts against them until one year after the treaty of peace has been signed or a state of peace declared to exist by the Federal government, then, manifestly, these men would be hampered in carrying on their business affairs, for a contract on which all remedies of enforcement are suspended, would be of little value. In view of the interpretation placed upon the State Moratorium Act in Strand v. Larson, supra. I am inclined to agree that the only interpretation which could possibly sustain the validity of the act, against an attack on the ground that the suspension of remedies therein provided is unreasonable, is that placed upon it by Mr. Justice Bronson.

I am aware that the last legislative assembly attempted to define the term, "during the time the United States is engaged in the present war." See chap. 138, Laws 1921. It is indeed difficult to understand exactly what the legislature intended by this enactment. Section 1 of that act says: "The period of time designated, 'during the time

the United States is engaged in the present war' in section one (1) of chapter ten (10) of the Laws of the Special Session of the Fifteenth Legislative Assembly is hereby declared to be terminated November 11, 1921." Section 2 of the act says:—"The period of time designated, 'the duration of the war' in chapter 5 of the Laws of the Special Session of the Fifteenth Legislative Assembly is terminated." As introduced, section 1 of the act also declared the period of time designated as "during the time the United States is engaged in the present war" to be terminated. During the course of passage, the act was amended so as to read as already indicated. It is for the courts to interpret and enforce laws. This action had been commenced, and had been determined by the trial court, before chapter 138, Laws 1921, was enacted, and the parties are entitled to the enforcement and application of laws existing at the time the controversy arose. While it is difficult to harmonize the provisions of chapter 138, Laws 1921, it is somewhat significant that the lawmakers recognized that Armistice day, rather than the day on which the treaty of peace may be ratified, or a state of peace declared to exist, constituted the date on which it might appropriately be declared that the United States ceased to be engaged in the World War.

In my opinion there is, however, another reason why plaintiff's complaint fails to state a cause of action within the purview of the State Moratorium Act. It will be noted that the act makes reference both to actions and proceedings sought to be instituted after, and to actions or proceedings pending at, the time it became effective. As to the former it provides that no actions or proceedings shall be commenced against persons in the active military service of the United States in the present war within the prescribed period. As to the latter it provides that during the prescribed time "no further proceedings shall be taken in any action or proceeding that is pending at the time of the taking effect of this act in which such a person is party over the objection of such party, his attorney, or any person interested on his behalf."

In this case the proceeding to foreclose the mortgage by advertisement had been completed, sale had been made, and certificate of sale issued to the purchaser, almost a month before the State Moratorium Act was enacted. The certificate of sale constituted a contract (Rob-

erts v. First Nat. Bank, 8 N. D. 504, 510, 79 N. W. 1049; Fisher v. Betts, 13 N. D. 197; E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 922; 6 R. C. L. pp. 365, 366), and had the same force and effect as though it had been issued pursuant to a sale under a decree of fore- closure. Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345.

I express no opinion as to the constitutionality of the State Mora- torium Act. Nor do I express any opinion as to whether that act was wholly superseded by the Federal Soldiers and Sailors Civil Relief Act as has been ruled by the supreme courts of Oregon and Wiscon- sin. Konkel v. State, 168 Wis. 335, 170 N. E. 715; Pierrard v. Hoch, 97 Or. 71, 184 Pac. 494, 191 Pac. 328.

ROBINSON, Ch. J. (concurring specially). I concur in the result of the decision as written by Mr. Justice Bronson. However, in a dissenting opinion, I have formerly held, and do still hold, that the State Moratorium Act is void for the reason that it impairs the obliga- tion of contracts, and for the reason that the subject is governed by an Act of Congress, which supersedes and excludes any legislation on the part of the state. As held by the Oregon supreme court: "The Na- tional Legislature has occupied the whole field, which of necessity ex- cludes all state legislation on the subject." Thress v. Zemple, 42 N. D. 599, 9 A.L.R. 1, 174 N. W. 87; Pierrard v. Hoch, 97 Or. 71, 184 Pac. 494, 191 Pac. 332.

GRACE, J. (concurring in the result). This action is in reality one in equity. The plaintiff seeks thereby the right to redeem from a cer- tain mortgage foreclosure sale of certain land, amounting to 480 acres. The mortgage foreclosure sale was one made under the power of a sale contained in the mortgage.

The complaint in this action is subject to criticism and objection, in that it does not set forth the equities, if any, which the plaintiff has. For instance, the 480 acres of land in question is, no doubt, fertile and valuable land. It is situated in a territory where land is valuable. There is, however, nothing in the complaint to show whether it is worth $40 per acre, or $75 per acre, or more or less than either of those amounts.

There is nothing to show whether this land is under cultivation, except the inference be drawn from the statement that certain crops were raised thereon in certain years.

There is no allegation, showing whether the buildings, if any, are worth $100 or $4,000, or any amount. There is nothing to show whether the $5,000 mortgage in question is a first mortgage, or whether there are other encumbrances prior or subsequent to it, or the total amount of the encumbrance or liens against the land, in order that it might be determined if the plaintiff has any equity in the land.

There is no allegation in the complaint that plaintiff never had any notice of the foreclosure sale, and that said foreclosure was started after his entrance into actual military service, and without his knowledge.

There is no allegation in the complaint showing in what manner, if any, the defendant took an undue advantage of plaintiff while he was absent in military service.

There is no allegation that plaintiff is able, ready, and willing to redeem the land, and is ready and willing to tender the amount of money necessary to redeem from the foreclosure sale.

There is no allegation as to the amount of the rents and profits for the years 1918 and 1919. No statement of the number of bushels raised, nor of the share to which plaintiff would be entitled as the owner of the land, nor of the price and value per bushel of the products raised on such farm.

There is almost a total failure in the complaint to set forth any equities claimed to exist in plaintiff's favor.

I concur in the result at which the majority opinion has arrived.