Argued July 18, decided Aug. 6, rehearing denied Dec. 31, 1912.

### HOWE *v.* KERN.

(125 Pac. 834.)
(128 Pac. 818.)

**Equity—Set-Off and Counterclaim—Cross-Bill—"Counterclaim."**

1. In an action by an executrix to compel the execution of a mortgage to secure the deferred payment of the purchase price of land, a minor heir to a part of the estate distinct from the land sold was not interested in the result, and the court had no jurisdiction to quiet title against him on defendant's cross-bill; cross-bills being abolished in equity actions by Section 390, L. O. L., and such relief against the minor not being a

counterclaim against the plaintiff within the meaning of Section 401, L. O. L., authorizing counterclaims.

**Infants—Actions—Process—Cross-Bill.**

2. In an action for specific performance, in which a minor was made a party defendant and served with summons based on the original complaint, judgment could not be rendered against the minor on defendant's cross-bill afterwards filed seeking to quiet title against such minor, where no summons was issued on the cross-complaint, although the guardian ad litem accepted service of the cross-complaint and filed an answer for the minor.

**Wills—Special Devises—Liability for Debts.**

3. Where two pieces of land were specifically devised, each was exempt under Section 1252, L. O. L., from sale for the payment of debts so long as any property not specifically devised remained unsold, and each piece was equally liable for such debts when the other property was exhausted.

**Wills—Secured Claims.**

4. A testator's debts which are secured by mortgage must first be satisfied out of the mortgaged property.

**Executors and Administrators—Sale of Land for Debts—Validity —Quantity of Property.**

5. Where property specifically devised is ordered sold for debts for which it is liable, the fact that more is included in the order than is necessary, or that part of the proceeds are applied to claims for which the property is not liable, does not invalidate the sale.

**Executors and Administrators—Sale of Land to Pay Debts— Petition.**

6. Where the petition for the sale of real property specifically devised showed that there was no other real property, and that the personal property was worth only $1.00, and enumerated debts and expenses of administration and taxes amounting to $506.53, it was sufficient to give the court jurisdiction and show a necessity for the sale.

**Executors and Administrators—Petition—Matters Judicially Noticed.**

7. Since the court will take notice of the contents of a probated will, a petition for the sale of property specially devised need not set out the will.

**Executors and Administrators—Sale of Land to Pay Debts—
      Petition—Jurisdiction.**

  8. The fact that an executrix's petition for the sale of land
specially devised prayed for the sale of more land than was
required to pay the debts, did not affect the court's jurisdiction
to order the sale.

**Wills—Sale of Land—Effect of Specific Devises.**

  9. The rule that land specifically devised cannot be sold for
the payment of debts and the expenses of administration until
all other assets of the estate are exhausted had no application
where all of testator's land was specifically devised.

**Executors and Administrators—Sale of Land to Pay Debts—
      Petition.**

  10. Where a guardian's petition for the sale of a testator's
land stated that the personal property had been appraised as
of no value and sold for $1.00 and itemized the unpaid debts
and the expenses of administration and taxes, and particularly
described all the land and the condition and probable value
of each parcel, together with the amount and nature of the liens,
and then gave the names, ages, and residences of the devisees,
concluding with a statement of the reasons why the sale should
be made, it fully met all the requisites prescribed by Section
1253, L. O. L., for the petition in such cases.

**Executors and Administrators—Order of Sale to Pay Debts—
      Collateral Attack.**

  11. Where, in a proceeding to sell a testator's land to pay
his debts, the county court had jurisdiction of the persons and
subject-matter, an order to sell the land, though improvidently
made and extravagantly executed, could not be collaterally
attacked in an action by an executrix to compel execution of a
mortgage to secure the deferred payment of the price for which
the land was sold.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

  This is a suit by James Gladstone Howe, a minor, by
Carrie Howe Sherwood, his guardian, against L. E. Kern,
Helen M. Kern, his wife, Joseph H. Nash and School Dis-
trict No. 1, of the city of Portland, Multnomah County,

Oregon, a corporation. The facts disclosed by the record are as follows:

James Howe, who died on June 24, 1901, made a will on March 14, 1898, and among other things provided:

"Third—I give, bequeath and devise unto my said wife, Carrie Howe, all that property platted and dedicated by me as Howe's Addition to the city of Portland and comprising about seventy-two lots, more or less, to be used or disposed of by her for the benefit of herself and my said infant son, and I expressly request that my wife provide for the education and maintenance of my said son out of the proceeds of said lots; provided, that three of the lots of said Howe's Addition be held in trust by my said wife for my stepson, William Leon Wheatly, the same to be selected and deeded to said William Leon Wheatly by my said wife whenever in her judgment she shall deem it proper or advisable to do so. Provided, further, that this devise to my wife shall also be subject to the conditions and limitations hereinafter expressed.

"Fourth—I give, bequeath and devise unto my wife, Carrie Howe, and my infant son, James Gladstone Howe, share and share alike, that piece or parcel of land containing about 5¾ acres of land lying to the east of and adjoining the said Howe's Addition to the city of Portland, said interest of my wife being also subject to the conditions and limitations hereinafter expressed."

"Sixth—I hereby appoint my wife, Carrie Howe, the legal guardian of my infant son, James Gladstone Howe, and request she be allowed to act as such guardian without bonds."

Item 7 provides the conditions upon which the devises to the wife shall depend, and she is nominated executrix without bonds.

By the inventory and appraisement of the property of the estate, the 72 lots mentioned in item 3 of the will are valued at $14,600, and the 5¾-acre tract mentioned in item 4 is valued at $5,750.

On April 3, 1901, Carrie Howe, the executrix, filed a petition in the county court for the sale of real estate for the purpose of paying the debts of the estate, the expenses

of administration, and for the support of the widow and minor child, who was five years of age and the only heir of the decedent. It appears from the petition that there was no personal property of the estate; that the funeral expenses were $227.50, the delinquent taxes $39.25, taxes for the current year $166.53, expenses of administration already incurred, $73.25; that petitioner is without means to support herself and son; that the debts secured by mortgages are $1,300; that there is a mortgage on block 5 for $600, one on blocks 6 and 7 for $400, and one on blocks 1, 2, and 8, and lots A and B for $300. She prays for an order directing her to sell at private sale any part of the real property for cash or on terms of one-third cash and the payment of the balance to be secured by mortgage.

The court made an order on May 6, 1901, licensing the executrix to sell at private sale such part or parts of block 3, which is appraised at $1,500; block 4, appraised at $2,500; lots 23 and 24 of block 7 in Wheatland Addition to East Portland, appraised at $15; and the 5¾-acre tract, appraised at $5,750—as may be necessary to pay the debts and expenses of administration. On and prior to September 8, 1902, she had sold 12 lots in blocks 2 and 3 for $1,455, and three other lots in block 2 for $400, the date of which sale does not appear, making $1,855 received from sales prior to the sale of the 5¾-acre tract, which was more than sufficient to pay the mortgage debts. This tract was sold to defendant Kern on December 1, 1902, for $3,750; $1,750 being paid in cash, and the remainder being secured by mortgage due in one year.

The final account, filed April 23, 1903, shows that the total amount received in cash from all sales, including the $400 collected for rent of the 5¾-acre tract, was $4,006, over and above the $2,000 deferred payment; that the total debts and expenses paid, including the mortgage debts, was $3,256.88.

On April 4, 1903, the executrix brought suit for specific performance against defendant Kern, he having refused to execute the mortgage to pay the deferred payment of $2,000, the purchase price of the 5¾-acre tract, and on May 12, 1903, Kern answered the complaint. He set out items 3, 4, and 7 of the will, and among other defenses alleged that the plaintiff, as executrix, could not give him a good title to the tract for the reason that no petition for an order of the sale of the real property herein mentioned had ever been made, stating the necessity of the sale.

The minor child was made a party defendant in the suit on July 3, 1903, on motion of defendant Kern, and summons was duly served on him on that date, and, on motion of defendant, Karl Stephan was appointed guardian *ad litem* for the minor. On the same day defendant Kern filed what he terms a cross-bill, under the title of the suit, which is, in fact, a complaint to quiet title to the property against the minor. Stephan, the guardian *ad litem*, accepted service of the cross-complaint on July 8, 1903; but no summons was issued or served on the minor. The guardian *ad litem* answered the cross-bill, admitting the justice of the complaint, and consenting to the decree. On July 16, 1903, the court made findings, and rendered a decree to the effect that the county court acquired jurisdiction of the minor and of the land in the proceeding to sell the same; that Kern acquired title thereto, and adjudged that the minor had no interest therein. On August 23, 1907, Kern sold and conveyed by a warranty deed, for a valuable consideration, 2½ acres of the 5¾-acre tract to defendant Joseph H. Nash, and on September 14, 1907, he sold and conveyed to the defendant school district No. 1 of Multnomah County, Oregon, for valuable consideration, 2½ acres of the tract, and the school district has erected a school building thereon at an expense of $37,000.

Plaintiff brought this suit on May 26, 1910, alleging the facts, which are briefly stated above, for the purpose of having declared void the proceedings of the county court authorizing the sale of the minor's interest in the 5¾-acre tract, and that the decree of the circuit court, in relation thereto, be held for naught, and the conveyances be declared void, alleging want of jurisdiction of the county court to authorize such sales, and alleging collusion and fraud between Carrie Howe, executrix, and Kern, in bringing the cross-bill and the proceeding therein, to bar the title of the minor.

Defendant Kern and wife answered, admitting some of the allegations and denying the others. Defendant Nash and the school district answered separately, setting out the proceedings of the county court, relating to the sale, and the proceedings of the circuit court quieting the title of Kern to the property; also, pleading the same facts as an estoppel against the plaintiff, and alleging that defendants are innocent purchasers thereof for value, without notice of any defect in the title.

Upon the trial of the suit the court made findings and rendered a decree that defendant Nash and the school district, respectively, are the owners in fee simple of the tracts conveyed to them by Kern, and that the plaintiff has no interest therein, from which decree plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Alex Bernstein, Mr. George A. Pipes* and *Mr. D. Solis Cohen,* with an oral argument by *Mr. Bernstein* and *Mr. Pipes.*

For respondents there was a brief over the names of *Mr. Robert C. Wright, Mr. Victor K. Strode, Messrs. Johnson & Van Zante,* and *Mr. Albert H. Tanner,* with oral arguments by *Mr. Wright, Mr. Strode* and *Mr. Tanner.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. When defendant Kern was called upon by the executrix to execute the mortgage to secure the $2,000, deferred payment of the purchase price of the 5¾-acre tract, he refused to do so, and she brought suit against him to compel specific performance. That suit raised only the question as to the liability of Kern upon his contract of purchase. His defense was that plaintiff could not give him a good title because the petition for the sale was insufficient to authorize an order of sale. He asks to have the minor made a party defendant in that suit, and an order to that effect was made by the court, but an amended complaint, accomplishing that result, was not filed. However, a summons was served on the minor, and, on motion of Kern, Stephan was appointed guardian *ad litem* for him in that suit. Kern being willing to complete the purchase and not satisfied that a decree against him in that suit would quiet his title, he filed what he terms a cross-bill, not against the plaintiff or for relief as to any matter involved therein, but to quiet title against the minor.

2. Upon the cross-bill no summons was issued and no service of the complaint was had on the minor, nor was there a guardian *ad litem* appointed for him, but service of the complaint was accepted by the guardian in the suit for specific performance, and he filed an answer therein. The guardian *ad litem* was selected by the executrix, and he did not investigate the minor's rights, but acted upon the advice of Mrs. Howe, and her attorney, who, it seems, drew his answer, yet her interests in the proceeding were adverse to that of the minor, as it would result in taking his property to pay debts chargeable upon the property devised to her. See *Bowman* v. *Anderson,* 62 Or. 431 (123 Pac. 1092). However, by Section 390, L. O. L., cross-bills are abolished except for the purpose of asserting an equitable defense in an action at law; but any defense that a defendant

may have against the plaintiff in a suit may be pleaded as a counterclaim under Section 401, L. O. L., if it be connected with the subject of the suit. Although the minor was made a party defendant in the suit for specific performance, he was in no way interested in the result. Therefore the circuit court had no jurisdiction in that suit to quiet the title as against the minor, and, so far as it attempted to do so, the decree was void, for the reason that the relief sought by the cross-bill was not a counterclaim against the plaintiff in the suit for specific performance, within Section 401, L. O. L., and for the further reason that the minor, against whom the relief was sought, was not brought into court by service of summons.

The plaintiff in this suit, assuming that the petition for the sale of the real estate in the probate proceeding was wholly insufficient to give the court jurisdiction to order the sale, alleges that the answer and cross-bill in the suit for specific performance and the proceedings thereunder were had by collusion and fraud between the executrix and Kern for the purpose of barring and cutting off any claim to the property by the minor; and the defendants, plead the proceeding under such answer and cross-bill as an adjudication of the title in their favor, and that they are innocent purchasers for a valuable consideration without notice of any collusion or fraud.

Without considering the question of collusion or fraud on the part of Kern and the executrix, we conclude that the decree in the suit for specific performance did not bar or estop the plaintiff from claiming title to the property, and this brings us to the consideration of the question of the sufficiency of the petition for the sale of the real estate and the validity of the order.

3. The first question of importance is as to the relation that the fourth item of the will—the devise of the 5¾-acre tract—bears to the other devise. This is a specific

devise to Carrie Howe and the infant. By Section 1252, L. O. L., when real estate is specially devised, it shall be exempt from the operation of the order of sale for the purpose of paying debts in the same manner as personal property; and by Section 1251 personal property, specially bequeathed, is exempt from the operation of the order of sale so long as any property not specially devised or bequeathed remains unsold. The wife's interest in the property devised by both items 3 and 4 is made contingent upon her remaining with the testator while he lives and remaining unmarried thereafter. In case of desertion or remarriage all the property is to go to the infant. Plaintiff has overlooked the fact that item 3 of the will is also a special devise of the property described and is exempt from the order of sale until property, not specially devised or bequeathed, has been exhausted. By the terms of item 3, the devise to Carrie Howe is charged with the support of herself and the education and maintenance of the child; and the property devised by item 4 cannot be sold to meet such expenses until the other property is exhausted.

4. The debts of the estate secured by mortgage must first be satisfied out of the mortgaged property. This is recognized by Section 1271, L. O. L., which provides for the payment of mortgage debts out of the personal property only when so provided in the will or by order of the court, and by Section 1272, L. O. L., if no such provision is made, the property shall be sold subject to the mortgage. The property devised by item 4 is equally liable with that devised by item 3 for the funeral expenses, debts of the estate, and expenses of administration, and either may be resorted to for the payment of such claims or liabilities; and if, in the course of the probate proceeding, either devise has contributed to such liability more than its share, the devisee is entitled to contribution therefor. Jarman, Wills, p. 2031.

5. But the property devised by item 4, having been ordered to be sold for debts for which it was liable, the fact that more property was included in such order than was necessary to pay such debts, or that a part of the proceeds of such sale was applied to claims for which it was not liable, cannot render the sale invalid.

6. The complaint in this suit alleges that the petition for the sale of real property was insufficient to give the court jurisdiction.

"That the said petition for the sale of real property was insufficient and did not contain the jurisdictional facts to give the court jurisdiction to base an order thereon directing the sale of the said minor's interest in and to the said tract of 5¾ acres especially devised to him by said will. That said petition failed to allege or show any necessity for the sale of said property, but, on the contrary, showed that there was no necessity to sell said property. That said petition failed to show that there were any claims for the payment of which said property could be subjected under the terms of the will as above alleged, and said petition failed to set out said will or to petition for the sale of the said property, but the said petition asked only for an order of the court permitting the executrix to sell such portions of said real property belonging to said estate as she might deem necessary from time to time in order that she might sell such part or parts without any order of the court therefor and without any determination by the court that the necessity existed for the sale of said part or parts of said property."

No facts are alleged, stating in what regard the petition failed to establish a necessity for the sale of the property, or that there were any claims for the payment of which such property could be subjected. If by this allegation plaintiff means that there was no necessity shown for the sale of this tract, it being specially devised, that objection is fully answered by what has been already stated; there being funeral expenses, expenses of administration, and taxes for which this property was liable.

The final account shows that there was actually more

than $1,650 of liabilities for which it was liable, and no property, not specially devised, was applicable to the payment thereof. Therefore the petition shows a necessity for the sale. The inventory and appraisement show there was personal property of the value of $1.00, practically no personal property. However, the petition recites that the personal property was sold for $1.00, and it enumerates the debts and expenses of administration and taxes amounting to $506.53, and for the payment of which this property was liable equally with the other.

7. It is also urged that the petition is defective because it does not set out the will; but, the will having been probated, the court will take notice of its contents.

8. The petitioner asks for an order permitting her to sell any part of the property of the estate for which she may be able to find a purchaser. Probably she asked for too much, but the prayer does not affect the jurisdiction. The order of sale does not grant all that is prayed for, but authorizes the sale of blocks 3 and 4, and lots 23 and 24 of block 7, in Wheatland Addition to East Portland, and the 5¾-acre tract or so much thereof as may be necessary to realize the amount of money sufficient to pay the claims, charges, and expenses of administration. Such latitude to the executrix was probably ill advised, but does not affect the jurisdiction to make the order or the title of the property sold thereunder. It being necessary that some of the real estate be sold to pay this indebtedness, and all the real property having been disposed of by special devises, the property under each devise is liable equally for the payment thereof, and the petition is not subject to the criticism offered, but was sufficient to give the court jurisdiction to make the order of sale.

The sale of more of the property than was necessary to pay the debts for which it was liable, and the payment of a part of the proceeds of the sale upon debts chargeable to other property, are matters of procedure that do not

go to the jurisdiction of the county court to make the order for the sale of property, and these defects are aided by the curative statute. Section 1259, L. O. L.

The decree is affirmed.                          AFFIRMED.

---

Decided December 31, 1912.

## ON PETITION FOR REHEARING.

(128 Pac. 818.)

MR. JUSTICE BURNETT delivered the opinion of the court.

The substance of the contention for the plaintiff is that the county court, in ordering the sale of the premises in question, acted without having acquired jurisdiction. It is disclosed by the record that, when the petition for the order of sale was filed, the estate consisted of the following items of real property constituting its only assets: Seventy-two lots in Howe's Addition to Portland; 2 lots in Wheatland Addition to Portland; and 5¾ acres of unplatted land adjoining Howe's Addition. Different portions of the property in Howe's Addition were subject to the lien of three several mortgages, leaving only blocks 3 and 4 in that addition unincumbered. The 5¾ acres and the two lots in Wheatland Addition were clear of liens of any kind.

9. The argument of the plaintiff is that the county court had no authority to direct the sale of his interest in the acreage realty for the payment of debts and expenses of administration because that property was specifically devised to him and hence could not be used for that purpose until all other assets of the estate were exhausted. The reason fails, however, when we consult the will and learn from it that in one way or another the testator specifically devised all the land of which he died seised. The Howe Addition property was devised to the mother in the main to dispose of for the mainte-

nance of herself and her son and for the education of the latter; the two lots in Wheatland Addition went to her in severalty, and the acreage fell to her and her son as tenants in common. All of these are specific devises and, taken together, cover all the property of the testator so that the limitation of specific devises preventing the application of such property to the discharge of the indebtedness and administration expenses in the first instance, is set at large and has no application here. The will does not give any of the devises preference over another. They are all of equal rank. Each of them, without reference, to the others, was subject to such debts and expenses as were properly chargeable against it. With this condition of the assets of the estate in mind, it remains to examine the petition for the order of sale and determine whether it stated facts sufficient to have given the county court jurisdiction to order a sale of the real property in dispute. We omit from Sections 1252 and 1253, L. O. L., the amendments, immaterial here, providing for the sale of real property in certain cases before the disposition of personalty, Laws 1905, p. 233, and quote those sections as they stood at the time of the transactions under consideration:

"Section 1252. When the proceeds of the sale of personal property have been exhausted and the charges, expenses and claims specified in Section 1249 have not all been satisfied, the executor or administrator shall sell the real property of the estate or so much thereof as may be necessary for that purpose. If any of such real property have been specially devised, it shall be exempt from the operation of the order of sale in the same manner as personal property specially bequeathed."

10. "Section 1253. The petition for the order of sale of real property shall state the amount of sales of personal property, the charges, expenses and claims still unsatisfied, so far as the same can be ascertained, a description of the real property of the estate, the condition and probable value of the different portions or lots thereof, the amount and nature of any liens thereon, the

names, ages and residence of the devisees, if any, and of the heirs of the deceased, so far as known." Sections 1172, 1173, B. & C. Comp.

The demands against the estate specified in Section 1249, L. O. L., are "funeral charges, expenses of administration and the claims, if any, against the estate." Section 1254, L. O. L., requires that —

"Upon the filing of the petition a citation shall issue to the devisees and heirs therein mentioned, and to all others unknown, if any such there be, to appear at a term of court therein mentioned, not less than ten days after the service of such citation, to show cause, if any exist, why an order of sale should not be made as in the petition prayed for."

In Section 1255, L. O. L., the rule is made that,, "upon an heir or devisee, known and resident within this State, such citation shall be served and returned as a summons."

Acting under these statutory provisions, the executrix who is at once the widow of the testator and the mother of his son, James Gladstone Howe, the plaintiff here, filed in the county court her petition for the sale of real property of the estate. That document recites her representative capacity; that the only personal property of the decedent which came to her knowledge, having been inventoried, was appraised as of no value; and that in pursuance of an order of the county court she had sold it to a person named for one dollar. Then follows this allegation:

"That the following is a statement of the charges, expenses and claims still unsatisfied against said estate so far as known and so far as the same can be ascertained, to wit: Claim of Edward Holman Undertaking Company for funeral expenses of decedent, $227.50; clerk's fees to date, $10.75; advertising expenses, $2.50; attorney's fees to date, $50.00; claim of Pacific Coast Abstract Company, $10.00; delinquent taxes for the year 1898, $39.25; and the mortgage indebtedness, amounting to $1,300, hereinafter described in the statement of liens on the real property of said estate."

The real property of the estate is described in the petition with particularity either by lots and blocks or metes and bounds. The condition of each parcel as to improvements, cultivation, and value is clearly stated, together with the amount and nature of the liens; the mortgages hereinbefore mentioned and the tracts affected by each being particularly described. The petition avers:

"That the names, ages, and residences of the devisees of said James Howe are as follows: Carrie Howe, your petitioner, the widow of said decedent, aged 40 years; James Gladstone Howe, the son of said James Howe, aged 5 years, and W. L. Wheatly, aged 26 years, all residing at Portland, Multnomah County, Oregon. That the only heirs of the said James Howe are the above Carrie Howe and James Gladstone Howe."

The petition narrates ineffectual attempts of the testator in his lifetime to make sale of the realty and avers the belief of the petitioner that the property would command better prices if offered at private sale for part cash and the remainder in deferred interest-bearing payments. The petition concludes with the averment:

"That your petitioner is without means to support herself or her son, the said James Gladstone Howe; that it is necessary to sell a portion of the said property to provide for the payment of the funeral expenses of said decedent, expenses of administration, and debts of the decedent, and for support of petitioner and her son, the said James Gladstone Howe, and it is for the best interest of said estate that she be permitted to sell all or any part of the above-described real property of said estate at private sale, for the reason that the said petitioner cannot at this time, nor can any one, tell what part of the real property may be sold to the best advantage of said estate and, by obtaining leave to sell at private sale any part of said real property of said estate, one proceeding only becomes sufficient to provide for all the needs of said estate and the cost and expense of further proceedings are thus saved."

No pretense is made but what citation in due form of law was regularly issued out of the county court and served as a summons upon the plaintiff in pursuance of this petition; that, so far as it depended upon the regularity of the issuance and service of this process of court, a guardian *ad litem* for the plaintiff here was properly appointed by the county court; and that the guardian so appointed answered for the minor, James Gladstone Howe, assenting to the sale as prayed for in the petition. The whole attack of the plaintiff here is grounded on the alleged insufficiency of the petition.   In our judgment, however, the petition in point of allegation fully meets all the requisites of such a pleading as laid down in Section 1253, L. O. L.   It was sufficient to give the county court jurisdiction of the subject-matter.   Speaking in general terms, it disclosed that there were claims and charges against the estate involving not only particular parcels of land under mortgages, but also the entire holdings of the estate under general charges for funeral expenses, taxes, and the like; that the proceeds of the sale of personal property, only one dollar, was not adequate to discharge the obligations of the estate.   The served citation gave the court jurisdiction of the persons of those interested in the realty, among whom was the plaintiff here.

11. Having jurisdiction of the persons, the subject-matter, and the thing involved, the county court was in a position to make an order of some kind for the sale of some of the landed property of the estate.   Thus equipped, the county court with all propriety could have made an order of sale superior to all the criticisms urged by plaintiff against the order actually entered of record.   It had a right to decide, although it may have decided wrongly. In the words of Mr. Justice LORD in *Nicklin* v. *Hobin,* 13 Or. 406 (10 Pac. 835):   "The question of whether a

judgment is right or wrong is a very different one from whether it is valid or void. Although it is the aim of courts to decide rightly, yet the power to decide necessarily carries with it the power to decide wrong as well as right; and, where a court has jurisdiction, the judgment or determination is binding and obligatory until reversed without reference to the question of whether it is right or wrong." *Alexander* v. *Gill*, 130 Ind. 485 (30 N. E. 525) ; *Crabill* v. *Crabill*, 22 Or. 588 (30 Pac. 320) ; *Altman* v. *School District*, 35 Or. 85 (56 Pac. 291: 76 Am. St. Rep. 468) ; *McFarlane* v. *Cornelius*, 43 Or. 513 (73 Pac. 325).

All the questions raised by plaintiff could have and should have been raised in answer to the citation or on appeal to the circuit court, or in other ways in the proceeding itself, or by some direct attack upon the resulting decision of the county court; but they avail him nothing when he assails the order of sale in this collateral litigation.

It is not necessary for us to decide whether or not the order of sale was improvidently made or extravagantly executed to the waste of the plaintiff's patrimony. All we determine is that, on the face of the record as discussed before us, the county court had jurisdiction of the subject-matter and all of the persons interested, and being unfettered as to specific devises, because all the land was in one way or the other so devised, that tribunal had the power to decide rightly or wrongly, in either of which cases its decree is immune from this collateral attack.

We reiterate our former decision.

AFFIRMED: REHEARING DENIED.