Argued September 6; demurrer to alternative writ sustained
September 19, 1944

STATE ex rel. BOWLES v. OLSON

(151 P. (2d) 723)

Before B<small>AILEY</small>, Chief Justice, B<small>ELT</small>, K<small>ELLY</small>, L<small>USK</small>, B<small>RAND</small> and H<small>AY</small>, Associate Justices.

*F. E. Wagner,* of Portland (McDannell Brown and W. A. Stockman, both of Portland, on the brief), for petitioner.

*Stanley Jones,* of Portland (James R. Bain, District Attorney, and W. G. Harrington, Deputy District Attorney, both of Portland, on the brief), for respondent.

The issue in this case arises upon demurrer to an alternative writ of mandamus wherein the petitioner is the Honorable Chester Bowles, Administrator of the

Office of Price Administration, and the respondent is the Honorable Fred L. Olson, a judge of the district court of the State of Oregon for Multnomah County. The alternative writ directs the respondent judge to take jurisdiction of an action filed in said district court, entitled *Waggoner v. Anderegg,* to permit petitioner, Bowles, to intervene in said cause, to vacate any orders contrary to the mandate of the alternative writ, and to proceed with the trial to a final determination thereof or, in the alternative, to show cause why he has not done so.

The action of *Waggoner v. Anderegg* is asserted to be one in which the plaintiff, Waggoner, acting under the provisions of the Emergency Price Control Act of 1942, seeks to recover treble damages on account of the sale of a refrigerator by the defendant, Anderegg, to the plaintiff at a price supposed to be in violation of the ceiling price established by the petitioner, Bowles.

By the provisions of the Emergency Price Control Act of 1942 the Administrator is authorized in the manner therein specified to establish such maximum prices "as in his judgment will be generally fair and equitable and will effectuate the purposes" of the Act. 56 Stat. 24, chapter 26, § 2 (a). It is further provided that "it shall be unlawful * * * for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * in violation of any regulation or order under section 2 * * *." 56 Stat. 28, chapter 26, § 4 (a). Fine or imprisonment is prescribed for willful violation of any provision of section 4. 56 Stat. 33, chapter 26, § 205 (b). The statute further provides that:

> "If any person selling a commodity violates a regulation, order, or price schedule prescribing a

maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. * * * Any suit of action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid. The provisions of this subsection shall not take effect until after the expiration of six months from the date of the enactment of this Act." 56 Stat. 34, chapter 26, § 205 (e).

It is also provided that:

"* * * In any suit or action wherein a party relies for ground of relief or defense upon this Act or any regulation, order, price schedule, requirement, or agreement thereunder, the court having jurisdiction of such suit or action shall certify such fact to the Administrator. The Administrator may intervene in any such suit or action." 56 Stat. 34, chapter 26, § 205 (d).

The alternative writ sets forth the official position of Chester Bowles as Administrator of the Office of Price Administration and pertinent provisions of the Emergency Price Control Act of 1942, cited above, being also Code Title 50, appendix §§ 901-946, and further alleges:

"* * * That pursuant to the authority of the said Emergency Price Control Act there was duly promulgated and published Maximum Price Regulation No. 139 (7 F. R. 7871), which maximum price regulation was in full force and effect at the time of the transaction hereinafter set forth.

"III.

"On the 8th day of January 1944, Mrs. D. W. Waggoner as plaintiff brought an action against

A. H. Anderegg, doing business as Art's Transfer as defendant in the District Court of the State of Oregon for Multnomah County, being case number 282-565, seeking to recover three hundred seventy-six dollars and fifty cents ($376.50), the same being treble the amount of an excessive charge on the sale by the said defendant to the plaintiff of a Stuart-Warner refrigerator bearing serial number 49164, model number 454S together with one-hundred dollars ($100.00) reasonable attorney's fees and for costs and disbursements and relying for recovery in said cause on Section 205 (e) of said Act and said Maximum Price Regulation 139 promulgated thereunder.

"On the 3rd day of March, 1944 the defendant demurred to the complaint upon the grounds that the Court did not have jurisdiction of the subject matter of the action, and

"On the 4th day of March, 1944 your petitioner filed a motion in intervention in said cause pursuant to Section 205 (d) of said Act.

"That on the 6th day of March, 1944, at which time said motion and demurrer came on to be heard before the Honorable Fred L. Olson, Judge of Department No. 2 of said Court, your petitioner filed a stipulation signed by the attorneys for the respective parties wherein it was stipulated that that Administrator of the Office of Price Administration might intervene in said action for the purpose of arguing the jurisdictional question.

"At the conclusion of argument on said motion and said demurrer the Court overruled the motion in intervention and sustained the demurrer."

A summary of the further allegations of the writ will suffice. It sets forth the dangers of inflation; the tendency to charge excessive prices resulting in obstruction of the war effort; the intent of Congress to provide a speedy and effective remedy for overcharges by action in state courts; the injury to the

petitioner and the consuming public by virtue of the respondent's refusal to take jurisdiction; the want of a plain, speedy or adequate remedy by appeal "in that a decision by the circuit court on appeal in that case would not establish a precedent binding upon the other courts of the state." It is further alleged that other district judges have expressed themselves as being unwilling to entertain jurisdiction and that the delays and expenses incident to appeals from the district court to the circuit court or incident to the commencement of small actions in the circuit court would prove a "serious deterrent to the prosecution of such cases and to the protection of the public interest." Then follows the mandate of the alternative writ as summarized in the first paragraph hereof.

BRAND, J.

Our first inquiry is whether the district court of Multnomah County has jurisdiction to try cases brought under the provisions of the Emergency Price Control Act by purchasers as plaintiffs against vendors who have violated ceiling price regulations. If the district court has no jurisdiction of the subject matter of such actions, the writ would be demurrable upon that ground alone and we would be relieved from considering the many other questions raised concerning its sufficiency.

Respondent Olson offers no substantial argument and cites no authority tending to cast doubt upon the duty of state courts to assume jurisdiction over such cases and to proceed with the trial thereof to final determination. His argument is merely to the effect that upon the facts set forth in the writ, this court should not require him to take jurisdiction of the particular case.

As far as it affects the issues involved in this case, the Emergency Price Control Act is constitutional. *Yakus v. United States,* 321 U. S. 414, 88 L. Ed. 834, 64 S. Ct. 660. Jurisdiction is conferred upon state courts in the type of case now under consideration.

"The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act, and, concurrently with State and Territorial courts, of all other proceedings under section 205 of this Act. * * *" 56 Stat. 33, chapter 26, 205 (c).

The power of Congress by general statutes to create substantive rights enforcible in state courts cannot be questioned. *Yakus v. United States,* supra; *Mondou v. New York and N. H. and H. Railroad Co.,* (2nd Employer's Liability Cases) 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; *Claflin v. Houseman,* 93 U. S. 130, 23 L. Ed. 833; *Kamboris v. Oregon-Washington Company,* 75 Or. 358, 146 P. 1097; *Pierrard v. Hoch,* 97 Or. 71, 184 P. 494, opinion on rehearing, 97 Or. 79, 191 P. 328.

■ Clearly, the district court of Multnomah County has jurisdiction to entertain actions of the kind under discussion, limited of course to cases in which the amount claimed does not exceed jurisdictional amount specified in O. C. L. A. 13-302. *Miller v. Municipal Court of the City of Los Angeles,* 22 Cal. (2d) 818, 142 P. (2d) 297; *Brown v. DeConcini, Arizona,* 60 Ariz. 476, 140 P. (2d) 224; *Lapinski v. Copacino, Connecticut,* 131 Conn. 119, 38 A. (2d) 592; *Wutkowski v. Palutes,* 131 N. J. L. 441, 37 A. (2d) 29. We are also of the opinion that where a state court has jurisdiction, refusal by it to permit the federal Administrator to intervene would, in view of the provisions of section 205 (d), supra, constitute at least an abuse of discretion

if not a violation of mandatory statute. *Brown v. DeConcini,* supra. See *Anderson v. Carter,* 159 Kan. 1, 150 P. (2d) 754.

The next question and the one urged by the respondent is whether the alternative writ sets forth sufficient facts to establish that the specific case of *Waggoner v. Anderegg* in the district court is one over which that court should take jurisdiction, and whether mandamus lies and should issue from this court to compel the assumption of jurisdiction.

The case of the petitioner must, upon demurrer, stand or fall upon the allegations of the alternative writ which is deemed to be the complaint. The writ must show at least prima facie a clear right existing in the relator to have the thing done which he seeks to enforce. Such writs are not favorites of the law and should state every fact necessary to entitle the relator to the relief demanded. The writ must therefore show that the relator has performed all of the acts which are made a condition precedent to his right to relief and the existence of all facts necessary to put the respondent in default. It must show the special interest of the relator and must negative any facts which under the statute relied upon might defeat his right to maintain the action. *Ross v. County Court of Marion County,* 147 Or. 695, 35 P. (2d) 484; *State ex rel. Innes v. Haner,* 123 Or. 301, 261 P. 81; *Paine v. Wells,* 89 Or. 695, 175 P. 430. The sufficiency of the alternative writ must be determined in the light of the foregoing principles.

In the writ it is alleged that pursuant to the Act there was duly promulgated and published Maximum Price Regulation No. 139 and that the same was in full force and effect at the time of the transaction set

forth. The terms of the regulation do not appear in the pleading, but through the prolonged and patient efforts of a staff of librarians, Regulation No. 139 was discovered in the Federal Register, vol. 7, No. 89, pages 3393 to 3403. The original Regulation No. 139 was issued on May 5, 1942, and published under date of May 7 that year. Amendments thereto, so far as relevant to our inquiry, will be noticed later.

■ Under the provisions of our statute, we are required to take judicial notice of the public official acts of the executive departments of the United States. O. C. L. A. 2-502 (3). It was, therefore, unnecessary for the petitioner to set forth in the writ the text of the regulations. *Howe v. Kern*, 63 Or. 487, 125 P. 834, 128 P. 818; *Parkersville District v. Wattier*, 48 Or. 332, 86 P. 775 (dictum); *Loranger v. Nadeau*, 215 Cal. 362, 10 P. (2d) 63, 84 A. L. R. 1264; 41 Am. Jur. 293, Pleading, § 9; 49 C. J. 36, Pleading § 11. (But see contra, dictum in *Watts v. Gerking*, 111 Or. 641, 222 P. 318, 228 P. 135, 34 A. L. R. 1489.)

When expanded by the judicially known provisions of Regulation No. 139, it appears from the writ that the Administrator promulgated an order entitled "Maximum Price Regulation No. 139—Used Household Mechanical Refrigerators." The order provides that

"* * * no person shall sell or deliver a used household mechanical refrigerator in the course of trade or business to a consumer at prices higher than the maximum prices set forth in Appendix A hereof, incorporated herein as section 1380.212 * * *."

Different maximum prices are fixed for such refrigerators according as they fall into one or another of three classes, as follows: (1) "as is" refrigerators; (2) unreconditioned refrigerators; (3) reconditioned

refrigerators. The "as is" refrigerator is one which does not meet the standards of the unreconditioned refrigerator or the higher standards descriptive of the reconditioned refrigerator.

From definitions contained in the order, it appears that "household refrigerator" means any mechanical refrigerator for household use which operates either by compression or by absorption. The word "used" as applied to household mechanical refrigerator, means one which has been delivered to a consumer who has acquired it for use and has used the refrigerator for a period of more than five days. "Consumer" means a person purchasing for use rather than resale.

Appendix A of the order (§ 1380.212), is headed "Maximum Prices for Used Household Mechanical Refrigerators—A, Maximum Prices for Models Older than 1941 Models." It provides that "the maximum price for the following makes and models of refrigerators shall be * * *." Then follows a list of various makes and models of refrigerators, among which we find listed the make known as Stewart Warner, as follows:

| Year | Model | Price "As Is" | Price Unreconditioned but Cleaned, Checked and Guaranteed for 90 Days | Price Reconditioned |
|------|-------|---------------|-----------------------------------------------------------------------|---------------------|
| 1934 | 454S | $19.50 | $27.00 | $57.00 |

Appendix A (b) provides that the maximum price for any 1941 or 1942 model of used household mechanical refrigerator shall be seventy percent of the original list price of the refrigerator when new. Appendix A (d), provides that if the sale of the refrigerator is made to a consumer in Oregon and certain other west-

ern states, $5 may be added to the maximum price as determined by the section quoted.

In view of the provisions of the statute and of the various orders above set forth, the question for determination is whether the remaining allegations of the writ establish a clear case for mandamus. We will consider first the provisions of the statute.

The provisions of the Act apply in the United States, its territories and possessions, and in the District of Columbia. The writ contains no allegation as to the alleged place of sale. We are expected to assume that the sale was made or was alleged by plaintiff, Waggoner, to have been made within the territory covered by the Act. The statute further provides that if a seller violates a maximum price schedule, the person *who buys such commodity for use or consumption other than in the course of trade or business* may bring an action. It does not appear in the writ whether the sale was made or was alleged by plaintiff, Waggoner, to have been made to her for use or consumption other than in the course of trade or business. Yet under the statute, it is a condition precedent to the right of recovery that the sale should have been made to one who buys for the limited purpose specified.

The statute provides that action under the treble damage provision shall be instituted within one year after delivery is completed. The Emergency Price Control Act of 1942 was approved on January 30 of that year. The provisions authorizing purchasers to sue for treble damages went into effect six months thereafter. The writ discloses that plaintiff, Waggoner, brought her action on the 8th day of January, 1944. The date of the sale upon which the action is based is not set forth. Whether the sale was made before or after January 8, 1943, and therefore whether

or not it was brought within the time limited by the statute which created the right, does not appear. This is not a case involving a statute of limitations to be raised by affirmative answer. The statute, which created the right, fixed the time within which action must be brought and the writ must affirmatively show that the action was brought within one year from the date of delivery of the commodities sold in violation of the regulation.

"Qualifications Annexed to Right of Action. A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. Such a provision will control, no matter in what form the action is brought. * * *" 34 Am. Jur. 16, Limitation of Actions, § 7. And see 37 C. J. 686, Limitation of Actions, § 5E.

■ The Emergency Price Control Act of 1942 provides that the action by buyer for treble damages may be brought "in any district in which any act or transaction constituting the violation occurred, and may also be brought in the district in which the defendant resides or transacts business." 56 Stat. 33, chapter 26, § 205 (c). Section 108 (a) of the Stabilization Extension Act of 1944 amends § 205 (c) of the Emergency Price Control Act of 1942 by providing that all suits under subsection (e) of section 205 shall be brought in the district or county in which the defendant resides or has

a place of business, an office, or an agent. It is unnecessary for us to decide whether the 1944 Act has any application to the action of the plaintiff, Waggoner, which action was filed prior to the date of the 1944 amendment. The alternative writ contains no allegation tending to show in what district or county any part of any act or transaction constituting the alleged violation occurred and contains no allegation as to the district in which the defendant, Anderegg, resides or transacts business or has a place of business, an office, or an agent. The facts which are necessary under either the original or the amended act for the establishment of venue in the district court of Multnomah County are not alleged in the alternative writ, nor is it stated therein that the requisite facts appear in the complaint in the district court.

█ Turning from the provisions of the federal statute to the provisions of Regulation No. 139, supra, we find that that regulation imposes a price ceiling only upon the sale of used household mechanical refrigerators as defined in Regulation No. 139. The alternative writ fails to describe any commodity as to which a price ceiling was established by Regulation No. 139, the only allegation being of a sale by the defendant, Anderegg, of a Stewart Warner refrigerator, bearing serial No. 49164, model No. 454S. We are not informed by the writ that the refrigerator sold by the defendant, Anderegg, was a used refrigerator, nor are we advised whether it was sold "as is", unreconditioned, or reconditioned. For all that appears, the article was a new refrigerator, not coming within the regulation at all. We learn from Regulation No. 139 that the price ceiling established for a Stewart Warner used mechanical household refrigerator, model No. 454S, may have been $19.50, $27, or $57, according to its condition if

the refrigerator was of the 1934 make. But if a used refrigerator was of the 1941 or 1942 model, the ceiling price would be seventy per cent of the original list price of the refrigerator when new. Again, if the sale was made in Oregon or certain other western states, the ceiling price would be $5 higher than that otherwise prevailing.

From the writ it appears only that the plaintiff, Waggoner, in her complaint seeks to recover $376.50 coupled with the assertion that that amount is "treble the amount of an excessive charge" on the alleged sale. Even the employment of the words "excessive charge" is ambiguous, if not clearly defective. An excessive charge is a charge which exceeds that which is proper. Those words are not the equivalent of the statutory provision authorizing recovery of treble the amount "by which the consideration exceeded the applicable maximum price." We conclude that there is no allegation in the writ from which it can be determined either that a sale was made in excess of any ceiling price established by Regulation No. 139, nor is there any allegation of fact as distinguished from conclusion of law as to the amount by which the consideration paid exceeded the applicable maximum price, if at all.

■ One further consideration must be noticed. The plaintiff, Waggoner, is not a party in this proceeding in mandamus, nor does the writ disclose that the action brought in the district court is still pending or that the plaintiff below desires further to prosecute the action. We are cited to no provision of the federal statute authorizing the Administrator who may have intervened in an action to compel the original plaintiff therein to continue the prosecution of the action against his will. Since, for all that appears in the writ, the plaintiff, Waggoner, may have voluntarily dismissed

her action in the district court and since the plaintiff, Waggoner, is not a petitioner in the mandamus proceeding, we think the writ fails to present a situation of fact which would warrant this court in directing that the Administrator be permitted to intervene in the action of *Waggoner v. Anderegg* if it is still pending. *Anderson v. Carter,* supra. This is said notwithstanding the fact that in a proper case brought in the district court wherein the complaint in that court discloses jurisdiction of the subject matter, the district court should permit the Administrator to intervene in aid of the plaintiff. If the case of *Waggoner v. Anderegg* was dismissed by the district court against the will of the plaintiff, Waggoner, and after the commencement of this proceeding in mandamus, a different question would be presented.

If a complaint in the district court shows that court to have jurisdiction of the subject matter under the federal statute, it would be the duty of the district court to assume jurisdiction even though the complaint was defective, or even demurrable, in respects relating to matters other than jurisdiction. The court having assumed jurisdiction would pass upon all non-jurisdictional objections and would permit a plaintiff to amend in the event that curable defects appeared in the complaint. In such a situation, if mandamus were brought to compel the district court to take jurisdiction and if the alternative writ should set forth the substance of the complaint below, (assuming the proceeding to have been brought by a proper party and to be otherwise sufficient) the petitioner would be entitled to relief regardless of non-jurisdictional defects appearing in the complaint below. The district court having jurisdiction would be directed to pass upon the non-juris-

dictional questions presented. But when, as in the case at bar, the allegations of the complaint below are not set forth in the alternative writ, this court will not be moved to administer the extraordinary remedy of mandamus unless the allegations of ultimate fact, as distinguished from the allegations contained in the complaint below, clearly disclose that the district court has jurisdiction under the federal statute and also disclose at least a prima facie right to recover in the lower court. As said in a recent case involving action under the Emergency Price Control Act for a service charge in excess of the federal price control schedule,

"When a business man is cited into court, with a purpose of penalizing him for a charge he has made for his own services or merchandise, the burden rests upon the complainant to make a clear case of some infraction of the law before he can be penalized for such alleged act." *Alpert v. Greenlee,* Idaho, 148 P. (2d) 777.

The substance of the complaint in the Waggoner case is not set forth in the alternative writ and allegations of fact in the writ itself fail in the particulars herein specified to disclose either that the district court has jurisdiction under the federal statute, or that there is prima facie a right of the plaintiff to recover therein.

The demurrer to the alternative writ is sustained.