**UNITED STATES v. STEAGALL et al.**

Civ. Nos. 1727, 1752.

United States District Court
N. D. Texas, Fort Worth Division.

Jan. 19, 1950.

Leland Kozar, St. Louis, for Office of Housing Expediter as plaintiff.

Lem Billingsley, Fort Worth, for defendants.

DAVIDSON, District Judge.

This suit was brought by Tighe E. Woods as Housing Expediter v. Pirl E. Steagall et al. seeking, primarily, restitution for approximately seventy-two tenants of the defendant who had, at various times, occupied the rental property of the defendant. Some of these claims extended back a number of years.

In addition to the claim for restitution there is also a claim for triple damages. For a suit of this character the amount involved was large.

At the threshold of the trial, and before we can determine and adjudicate the rights of the parties, we are confronted with the question of jurisdiction, in that the statute only gives the court jurisdiction in claims that have arisen within one year prior to the institution of suit. The statute in question, known as the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., reads as follows:

"Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment, for reasonable attorney's fees and costs as determined by the court, plus liquidated damages * * *.

"Suit to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction *within one year* after the date of such violation." 50 U.S.C.A.Appendix, § 1895.

■ This statute has been treated in some hearings, and in cases presented by able attorneys, as a statute of limitation. In our view it was not so written or intended, but is definitely one of jurisdiction. The decisions on this question to date are in conflict. Many more are based upon decisions written before the Housing and Rent Act of 1947 was enacted. In order to get the full bearing of the 1947 act upon previous Acts of Congress, we believe it would be expedient and helpful to take a review of the Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., the Amendatory Act of 1944, 50 U.S.C.A.Appendix,

§ 925, and the Federal Housing and Rent Act of 1947.

### Chapter 26, 77th Congress
### "An Act

"To further the national defense and security by checking speculative and excessive price rises, price dislocations, and inflationary tendencies, and for other purposes. * * *

"Section 1. (a) * * * the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; * * *.

"(b) The provisions of this Act, and all regulations, orders, price schedules, and requirements thereunder, shall terminate on June 30, 1943. * * *

### "Prices, Rents, and Market and Renting Practices

"Sec. 2. (a) Whenever in the judgment of the Price Administrator (provided for in section 201) the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. * * *

"(b) Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act, he shall issue a declaration setting forth the necessity for, and recommendations with reference to, the stabilization or reduction of rents for any defense-area housing accommodations within a particular defense-rental area. * * * The Administrator shall ascertain and give due consideration to the rents prevailing for such accommodations, or comparable accommodations, on or about April 1, 1941. * * *

"Sec. 4(a) It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing. * * *

### "Title II—Administration and Enforcement

"Sec. 201. (a) There is hereby created an Office of Price Administration, which shall be under the direction of a Price Administrator (referred to in this Act as the 'Administrator'). The Administrator shall be appointed by the President, by and with the advice and consent of the Senate, and shall receive compensation at the rate of $12,000 per annum.

\*      \*      \*      \*      \*      \*

"Sec. 204. (a) Any person who is aggrieved by the denial or partial denial of his protest may, within thirty days after such denial, file a complaint with the Emergency Court of Appeals, created pursuant to subsection (c). * * *

"(c) There is hereby created a court of the United States to be known as the Emergency Court of Appeals. * * * The court shall exercise its powers and prescribe rules governing its procedure in such manner as to expedite the determination of cases of which it has jurisdiction under this Act. * * *

"(d) * * * Judgment or order shall be subject to review by the Supreme Court in the same manner as a judgment of a circuit court of appeals. * * *

"Sec. 205. (a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will con-

stitute a violation of any provision of section 4 of this Act, he may make application * * * injunction * * * granted * * *.

"(b) Any person who willfully violates any provision of section 4 of this Act * * * shall, upon conviction thereof, be subject to a fine of not more than $5,000, or to imprisonment * * *.

"(c) The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act. * * *

"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity * * * may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. * * * The Administrator may bring such action under this subsection on behalf of the United States. Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid.

* * * * * *

"Sec. 306. This Act may be cited as the 'Emergency Price Control Act of 1942'. Approved, January 30, 1042."

Title I—Amendments to the Emergency Price Control Act of 1942
"Amendments to Section 205 of Emergency Price Control Act of 1942
"Sec. 108(b) Subsection (e) of section 205 of the Emergency Price Control Act of 1942, as amended, is amended to read as follows:

"'(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business

may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. * * * If * * * the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period.'"

## "An Act

"Relative to maximum rents on housing accommodations; to repeal certain provisions of Public Law 388, Seventy-ninth Congress, and for other purposes. * * *

### "Title II—Maximum Rents

"Sec. 201. (b) * * * it is necessary for a limited time to impose certain restrictions upon rents charged for rental housing accommodations in defense-rental areas. Such restrictions should be administered with a view to prompt adjustments. * * *

"Sec. 203. (a) After the effective date of this title, no maximum rents shall be established or maintained under the authority of the Emergency Price Control Act of 1942, as amended, with respect to any housing accommodations. * * *

"Sec. 204. (a) The Housing Expediter shall administer the powers, functions, and duties under this title; * * *.

"(b) During the period beginning on the effective date of this title and ending on the date this title ceases to be in effect, no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942. * * *

"Sec. 201. (a) The Congress hereby reaffirms the declaration in the Price Control Extension Act of 1946 that unnecessary or unduly prolonged controls over rents would be inconsistent with the return to a peacetime economy. * * *

"Recovery of Damages by Tenants

Sec. 205. Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment. * * * *Suit* to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of such violation.

\* \* \* \* \* \*

"Sec. 213—This Act may be cited as the 'Housing and Rent Act of 1947'."

By 1947 the ceiling price had been dropped on most all commodities except that of rent. The Act of 1947 is designated and referred to as the "Housing and Rent Act of 1947". In this Act, Section 205 is brought forward, but the term of punishment provided for is omitted and Section 205 begins with the civil provision which was subsection (e) under the former Act. This again expressly provides that suit to recover such amount may be brought in any Federal, State or Territorial Court of competent jurisdiction within one year after the violation.

In 1942 Congress created the Office of Price Administrator, OPA. The other day I ran across in my files a batch of stamps, where I could take one and buy sugar, another where I could buy gasoline, and all those things. That was modified again in the Act of 1944, brought forward as substantially the same.

In 1947 the war was over and there was a clamor for a discontinuance of these war measures. Congress decided to discontinue practically all of it, except the matter of rents, and it passed an Act dealing largely with rental control, the Act of 1947.

█ We think it very clear that any suit must be brought under the Federal Housing and Rent Act of 1947. It has no saving clause. Congress simply brought forward this much of the OPA and incorporated it under the duties of the Federal Housing Expediter. We think every action must stand or fall under the Act of 1947.

The law as announced by Justice Bratton of the 10th Circuit, 158 F.2d 478, 479; Matheny v. Porter, Price Administrator, we think is so clearly stated that there is no room for error or mistake:

"The complaint alleged in general language that at all times pertinent thereto the defendant sold motor vehicles in the course of trade or business at prices greater than the maximum prices fixed under the Act. The dates of the several sales relied upon to constitute the cause of action for damages were not set forth. Neither was it pleaded that the sales took place within one year prior to the institution of the action. When the cause came on for trial, the defendant interposed a motion to dismiss the action on the ground that the complaint failed to allege that the cause of action accrued within one year prior to the filing of the suit. The court denied the motion. Section 205(e) of the Act, 50 U.S.C.A.Appendix, § 925(e). \* \* \*

"Section 205(e) creates a new liability, one unknown to the common law and not finding its source elsewhere. It creates the right of action and fixes the time within which a suit for the enforcement of the right must be commenced. It is a statute of creation, and when the period fixed by its terms has run, the substantive right and the corresponding liability end. Not only is the remedy no longer available, but the right of action itself is extinguished. The commencement of the action within the time is an indispensable condition of the liability. Cf. The Harrisburg, 119 U. S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Midstate Horticultural Co., Inc., v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed 96.

"In a case of this kind brought under the provisions of a statute creating the right of action where none previously existed and qualifies the right of action by requiring that the suit to enforce it be brought within a limited time, it must affirmatively appear from the face of the complaint that the action was commenced within the prescribed time State ex rel. Bowles v. Olson, Judge, 175 Or. 98, 151 P.2d 723; Hamilton v. Hannibal & St. J. R. Co., 39 Kan.

56, 18 P. 57; Gulledge v. Seabord Air Line R. Co., 147 N.C. 234, 60 S.E. 1134, 125 Am. St.Rep. 544; Bowery v. Babbit, 99 Fla. 1151, 128 So. 801; Lapsley v. Public Service Corporation of New Jersey, 75 N.J.L. 266, 68 A. 1113; Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, 113 A. 202; State for use of Dunnigan v. Cobourn, 171 Md. 23, 187 A. 881, 107 A.L.R. 1045; Sharrow v. Inland Lines, 214 N.Y. 101, 108 N.E. 217, L.R.A.1915E, 1192, Ann.Cas.1916D, 1236; Hartray v. Chicago Rys. Co., 290 Ill. 85, 124 N.E. 849; American R. Co. of Porto Rico v. Coronas, 1 Cir., 230 F. 545, L.R.A. 1916E, 1095; John F. Jelke Co. v. Smietanka, 7 Cir., 86 F.2d 470, certiorari denied 300 U.S. 669, 57 S.Ct. 511, 81 L.Ed. 876; Bowles v. American Distilling Co., D.C., 62 F.Supp. 20. Insofar as it related to the recovery of damages, the complaint was fatally defective in its failure to show that the suit was commenced within one year after the cause of action accrued, and therefore the denial of the motion to that extent constituted error."

The case of the Co-efficient Foundation v. Woods, 5 Cir., 171 F.2d 691, originally tried here in this courtroom, turned upon a point of equity. It did not modify or treat the statute as governing the case, but followed Judge Murphy in the oft-quoted Porter v. Warner Holding Co. case, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, which we think is not applicable here.

Judge Chestnut in Creedon v. Molyneaux et ux., D.C., 74 F.Supp. 632, 634, comments interestingly on the Warner opinion in the following language: " * * * in the opinion [Porter v. Warner Holding Co.], 328 U.S. [395] pages 401, 402, 66 S.Ct. [1086] 1090, 1091 [90 L.Ed. 1332], the distinction between the nature of the enforcement provision in sections 205(a) and 205(e) of the Act is pointed out by the court, and it is said: 'To the extent that damages might properly be awarded by a court of equity in the exercise of its jurisdiction under § 205(a) see Veazie v. Williams, 8 How. 134, 160, 12 L.Ed. 1018, § 205(e) supersedes that possibility and provides an exclusive remedy relative to damages. It establishes the sole means whereby individuals may assert their private

right to damages and whereby the Administrator on behalf of the United States may seek damages in the nature of penalties. Moreover, a court giving relief under § 205(e) acts as a court of law rather than as a court of equity. But with the exception of damages, § 205(e) in no way conflicts with the jurisdiction of equity courts under § 205(a) to issue whatever "other order" may be necessary to vindicate the public interest, to compel compliance with the Act and to prevent and undo inflationary tendencies.' "

The Warner decision by Judge Murphy was rendered prior to the enactment of the Housing and Rent Act of 1947. At the time of the passage of this Act, practically all the other provisions of the law creating the Office of Price Control were dropped except Title 50, Section 1895, section 205, Act of 1947, the same that we have heretofore quoted, and the law under which this suit must be maintained. By this Act Congress made restitution to the tenants a matter of statutory law, and we might well observe here that a rule of equity can be modified by statute just as well as the common law may be so modified. It has been a rule of common law from time immemorial that a man be held responsible for his negligent acts. This has been modified by law, instance the Workmen's Compensation Act of Texas, Vernon's Ann.Civ.St. art. 8306 et seq. The equity powers of the Court may also be abridged in like manner, instance, injunctions in labor controversies. Whenever the legislative branch of government enters a field and enacts a law, both existing law and equity must conform thereto.

Moreover, if Congress had intended the Warner case to be the law of the land rather than the Housing Act of June 30, 1947, it would not have dropped the other provisions from the Emergency Price Control Act of 1942. We think the very right to ask for restitution for the benefit of tenants is contingent upon the Act of Congress itself which authorized such recovery; and such recovery, if sought, must conform to the law by which it was authorized.

104

The more recent decision of Mrs. Messina Smith et al. v. Tighe E. Woods, Housing Expediter, 5 Cir., 178 F.2d 467, also follows the Warner Holding Company case which, we think, has at least been modified by the Act of 1947.

It is the view of the Court that the plaintiff has a right to recovery, limited to a period of one year dating from the filing of his original suit.

In another branch of the case, the defendant insists that in several instances the burden of the tenancy was increased by an additional family or person, and that he was therefore entitled to charge more. We think this is a matter which is not subject to the review of the Court and that the remedy of the defendant was before the Office of the Housing Expediter in its function of handling the matter of rental control.

As against other tenants, the defendant insists that he so greatly improved the premises occupied by such tenants that the property was subject to decontrol and no longer under the ceiling price fixed by the OPA or Office of the Housing Expediter. This, too, we think is not subject to review of the Court but was a matter to have been handled by the Federal agency which fixed the rental ceiling.

After the controversy started the defendant entered into a compromise with a number of tenants for a consideration of ten dollars, five dollars in some cases, and more than five in some cases. Ordinarily, when men contract, they have the right to do so. Ordinarily, when men have a controversy, the law looks with favor upon the parties settling that lawsuit. But, where the the law imposes a limitation on a landlord, and says he must not charge more rent than a certain ceiling price, and he and the tenant get off and fix a writing, so that he can charge more than the ceiling price, he and the tenant are collaborating together to set the law aside, and that act is against public policy, and no contract that they make to set the law aside will be enforced.

All these contracts that were entered into, compromising the litigation, will have to be held void, but the money that was paid for them will be credited to the defendant.

Now, where a contract is made after the tenant moved out of the place, and he has nothing to gain or lose, in the consideration, and he and the landlord entered into a compromise, we will respect that compromise as valid.

After the State of Texas decontrolled rents, and the landlord knew that he had nothing to gain by compromising with the tenant, we will respect that kind of a settlement. But, any kind of settlement entered into when these conditions did not prevail will have to be set aside.

The defendant claims damages to the property as an offset against certain tenants. In one case a child or some irresponsible person took a hammer or hatchet and beat up the door and window facings. In another case the woman tenant poured a tub of water or soapsuds on a polished floor. It is difficult for the Court to go into the details and decide these matters with exact justice, but we believe that the injury or damage in a few of these cases was sufficiently severe and perhaps willful or wanton so that some offset should be allowed the defendant. Against the tenant Mrs. Griffin and against the tenant Irby and the tenant Brown there will be allowed an offset of $50.00 each. Against the tenant Martin there will be an offset of $75.00. On the other hand, the treatment of the tenant Lanier and one other, name to be taken from the record of the testimony, was so disagreeable on the part of the landlord that we feel triple damages should be allowed as to these two tenants.

The plaintiff Housing Expediter seems to rely on Section 206 of the Act of 1947. Section 206 contains no provision whatever authorizing the recovery by tenants, or by the Administrator for the tenants. If the suit is brought under Section 206 no restitution whatever can be ordered, except purely as a matter of equity. In view of Section 205 being explicit in its terms and standing alone from 206, we think they are distinct and separate statements of the law. We are inclined to follow the statute as

enacted by Congress, rather than a decision written before the Act of Congress.

In this connection, we think the observation of Judge Hutcheson most appropo: "Completely discarding the gloss they have put upon it, we return then to the statute to find in its clear and simple language the way that we should go." Addison v. Commercial National Bank of Shreveport, 5 Cir., 165 F.2d 937, 940.

Viewing the evidence as a whole, the plaintiff will recover in the form of restitution for all rents above the established ceiling that were paid or collected for the year immediately preceding the filing of this suit, and judgment will be entered accordingly.